## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS BARNES, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-cv-2137 |
| | ) | |
| ROB JEFFREYS, in his official Capacity as the Director of the Illinois Department of Corrections, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT FOR
## INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Marcus Barnes, individually and on behalf of all others similarly situated, complains against Defendant Rob Jeffreys, Director of the Illinois Department of Corrections, as follows:

## NATURE OF THE CASE

1. In the midst of a global pandemic that poses an acute risk to the health and safety of imprisoned individuals, Plaintiff Marcus Barnes remains imprisoned in the Illinois Department of Corrections ("IDOC") 16 months beyond the completion of his court-ordered term of imprisonment.

2. On Sunday, April 5, 2020, IDOC confirmed that a staff member at Graham Correctional Center (where Plaintiff is imprisoned) has been diagnosed with COVID-19, putting the entire population of individuals imprisoned at Graham in imminent danger of infection.

3.  As outlined in detail in this Court's decision in *Murphy v. Raoul*, 380 F. Supp. 3d 731 (N.D. Ill. 2019) (Kendall, J.) (hereinafter "*Murphy*"), the IDOC will not release individuals who have an indeterminate term of Mandatory Supervised Release ("MSR") from prison unless and until they obtain an approved "host site" at which to reside while on MSR. Plaintiff Barnes is a member of the class in *Murphy*.[1]

4.  After extensive efforts by his family over the past 18 months, Plaintiff Barnes has identified a host site at which to serve his MSR time that meets almost every restriction imposed by Illinois law—it is more than 500 feet away from any schools, playgrounds, and daycares (720 ILCS 5/11-9.3 (b-5), (b-10)); and it is not "near" any "parks, … swimming pools, beaches, theaters, or any other places where minor children congregate." (730 ILCS 5/3-3-7(b-1)(12)).

5.  The sole reason the IDOC will not release Barnes to this host site is because another individual who is required to register as a sex offender lives at the same address, and Illinois law prohibits individuals on MSR for sex offenses from living "at the same address or in the same condominium unit or apartment unit or in the same condominium complex or apartment complex with another person he or she knows or reasonably should know is a convicted sex offender or has been placed on supervision for a sex offense." 730 ILCS 5/3-3-7(a)(7.6) (hereinafter the "One-Per-Address Statute").

6.  Plaintiff, individually and on behalf of all others similarly situated, contends that continued enforcement of the One-Per-Address Statute violates the Eighth

---

[1]   This case is being filed as "related" to *Murphy v. Raoul,* 16-cv-11471 and should be assigned to Judge Kendall pursuant to L.R. 40.4(a).

Amendment as applied to members of the *Murphy* class and seeks an injunction prohibiting Defendant Jeffreys from continuing to enforce the Statute.

## JURISDICTION AND VENUE

7.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 2201. Pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, this Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper.

8.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims asserted herein occurred in this district.

## THE PARTIES

9.  Defendant Rob Jeffreys is sued in his official capacity as director of the Illinois Department of Corrections. In his capacity as the director of IDOC, he has final authority to set the Department of Corrections' policies with regard to approval of prisoners' host sites. The Department of Corrections' power to approve or deny proposed host sites is the sole mechanism through which the One-Per-Address Statute is enforced.

10. Plaintiff Marcus Barnes is a prisoner at Graham Correctional Center. He completed his prison term on December 17, 2018, and has been entitled to release from prison on MSR since that date. He remains in prison because he has been unable to obtain a "host site" that meets the IDOC's approval. At present, the sole

reason he is not being released is that another individual who is required to register as a sex offender resides at the proposed host site at which he seeks to reside.

11.   Plaintiff Barnes seeks to represent a class of all individuals who have served their entire sentence of imprisonment and are entitled to release on MSR but remain in prison because they cannot obtain a host site that satisfies the One-Per-Address Statute.

## RELEVANT FACTS

**Plaintiff Marcus Barnes**

12.   Marcus Barnes is 42 years old. He was convicted in 2008 of criminal sexual assault and sentenced to serve 12 years in IDOC plus an indeterminate term of "three years to life" on MSR.

13.   With good time credits, Barnes completed his prison sentence on December 17, 2018, and was approved for release on MSR by the Prisoner Review Board.

14.   Barnes has a caring family that has worked tirelessly for the past 18 months to find him a place to live while on MSR.

15.   Barnes has submitted 11 different potential host sites. Some of the sites were with family members; others were private residences where Barnes would have lived alone.

16.   IDOC has rejected every one of these proposed host sites. The IDOC has given Barnes various reasons for rejection of the sites, including the proposed site being too close to a daycare; in a "motel"; and too close to an "after school program."

17.   In February 2020, Barnes' family found him a place to stay on the 5700 block of South Sangamon in Chicago. The building is owned and operated by an organization called Jordan's Dream, which provides transitional housing and supportive services (such as help with locating employment, religious services, and connections to mental health providers) to individuals who have been convicted of sex offenses.

18.   The building is a typical Chicago two-flat with two apartments, one on the second floor and one on the first floor.

19.   IDOC investigated the address and confirmed that it complies with the statutory restrictions on proximity within 500 feet of schools, playgrounds, daycares and other places where children congregate.

20.   The sole reason the address has been rejected is that another registrant lives at the address.

21.   Because this address has been rejected, Barnes remains imprisoned in IDOC.

22.   Jordan's Dream still has an opening for Barnes at the Sangamon address and would still like to have Barnes live there.

23.   Barnes' father died on March 31, 2020.

24.   Marcus Barnes remains in prison and is unable to mourn the loss of his father with the rest of his family, although he has already served his time and should have been released 16 months ago.

**The *Murphy* Litigation**

25.    The plaintiffs in *Murphy* challenged the constitutionality of the "host site" requirement as it was being applied to individuals who have been sentenced to an indeterminate term of "three years to life" on MSR. Such individuals face the possibility of being imprisoned for life if they are unable to find and/or pay for housing that meets the requirements imposed by Illinois law and IDOC policy because their MSR time never begins to run until they are released from prison to an approved host site. *See* 730 ILCS 5/3-14-2.5(e).

26.    The *Murphy* plaintiffs identified several layers of restrictions that limit where people sentenced to indeterminate MSR can live, which together make it impossible for the members of the class to find host sites. Among the restrictions are the following:

- Sections of the Illinois Criminal Code which make it a crime for any individual classified as a "child sex offender" to live within 500 feet of a school, playground, or daycare (720 ILCS 5/11-9.3 (b-5), (b-10));

- Sections of the Illinois Unified Code of Corrections which prohibit persons required to register as sex offenders from living "near" "parks, schools, day care centers, swimming pools, beaches, theaters, or any other places where minor children congregate without advance approval of an agent of the Department of Corrections" (730 ILCS 5/3-3-7(b-1)(12));

- The One-Per-Address Statute, which requires individuals on MSR for sex offenses to "refrain from residing at the same address or in the same condominium unit or apartment unit or in the same condominium complex or apartment complex with another person he or she knows or reasonably should know is a convicted sex offender" (unless residing at a "licensed transitional housing facility for sex offenders," a facility "operated or licensed by the Department of Children and Family Services or by the Department of Human Services," or a "licensed medical facility") (730 ILCS 5/3-3-7(a)(7.6));

- Housing restrictions imposed as a matter of IDOC policy including prohibitions on living in a host site where children visit or reside (including the parolee's own children), where there are computers or Wi-Fi access, and/or where there is no land-line telephone;

- The unavailability of half-way houses, transitional housing, homeless shelters or other free or low-cost housing for indigent parolees; and

- The IDOC's interpretation of the One-Per-Address Statute as prohibiting a sex offender parolee from living in a building adjacent to a building where another registrant lives and/or from living in the same trailer park as another registrant.

27. *Murphy* was certified as a class action on behalf of "all individuals sentenced to serve three-years-to-life on MSR currently detained in the IDOC who have been approved for release on MSR by the PRB but have been denied release from IDOC custody because of their inability to obtain an approved host site." *Murphy v. Raoul*, 16-cv-11471, ECF No. 63. Marcus Barnes is a member of the *Murphy* class.

28. On March 31, 2019, this Court granted the plaintiffs' motion for summary judgement on their claim that the State's statutory and regulatory scheme violates the Equal Protection Clause and the Eighth Amendment. *Murphy v. Raoul*, 16-cv-11471, ECF No. 132; *Murphy v. Raoul*, 380 F. Supp. 3d 731 (N.D. Ill. 2019).

29. The Court's summary judgment decision did not single out a particular Illinois law or IDOC policy that violated the constitution. Rather, the Court held that the State's "statutory and regulatory scheme" as a whole (*i.e.*, the overlapping restrictions imposed by Illinois law, the IDOC's interpretation of the law, and the IDOC's policies) violates the *Murphy* class's constitutional rights.

30. On January 15, 2020, the Court entered a permanent injunction requiring the Illinois Department of Corrections to put forth a plan "setting forth the specific steps [the Defendants] will take to ensure that by no later than January 2, 2021, no member of the class will remain imprisoned due to an inability to comply with the host site requirement." *Murphy v. Raoul*, 16-cv-11471, ECF No. 156.

31. The permanent injunction also calls for the IDOC to provide the Court with periodic status reports concerning its implementation of the compliance plan and progress towards the January 2, 2021, compliance deadline. *Id*.

32. At the time of this filing, it is counsel's understanding that the IDOC has succeeded in releasing only three members of the *Murphy* class from IDOC. Each of those individuals were detained in IDOC for more than eight years beyond the completion of his prison sentence.

33. As of March 2020, the *Murphy* class comprises 297 individuals who remain in prison beyond the completion of their court-ordered sentence of imprisonment due to an inability to meet the host site requirement.

34. The IDOC's compliance plan for meeting the January 2, 2021, deadline includes several worthwhile proposals, including changes to IDOC interpretation of statutory restrictions (*e.g.*, not applying the One-Per-Address Statute to trailer parks and adjacent buildings); changes to IDOC policy (*e.g.*, allowing individuals to reside at addresses with Wi-Fi, relaxation of the land-line requirement); and contracting with private vendors to provide transitional housing. *Murphy v. Raoul*, 16-cv-11471, ECF No. 161.

35.    The plan also notes that "[t]here are many statutory provisions that impede the Department's ability to approve prospective host sites for sex offenders" and states that the Department "hopes that some of the statutory impediments to identifying host sites can be reduced or eliminated through legislative change." *Id*. at 3-4.

**Health Risks of Detention in IDOC Amid the COVID-19 Pandemic**

36.    We are in the midst of a world-wide health crisis caused by the rapid spread of coronavirus and COVID-19. The number of known COVID-19 infections is rising at an alarming rate. As of April 5, 2020, there have been more than 1.2 million infections globally[2]; and Illinois alone has nearly 9,000 known cases.[3] Nearly 70,000 people have died.[4]

37.    The risks to the health of individuals detained in close proximity to one another in prisons—as well as the staff, attorneys, medical professionals, and clergy who visit and work in these prisons—cannot be overstated. COVID-19 is highly contagious between people who are in close contact with one another.[5]

---

[2]    *See* Johns Hopkins University, Coronavirus Resource Center, https://coronavirus.jhu.edu/map.html (last visited April 3, 2020).

[3]    "Coronavirus in Illinois Updates," *Chicago Tribune*, April 3, 2020 (available at: https://www.chicagotribune.com/coronavirus/ct-coronavirus-pandemic-chicago-illinois-news-20200403-dr4twatabrcx5ccwzcws4uwngu-story.html)

[4]    *See* note 2, *supra*.

[5]    "How COVID-19 Spreads," *Centers for Disease Control and Prevention* (available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html)

38.    The virus is transmissible through coughing, sneezing, and contact with surfaces.[6] Experts advise that "talking" and "normal breathing" also likely transmit the disease.[7] The CDC urges social distancing—*i.e.*, every person should remain at least six feet away from every other person—to avoid transmission of the disease.[8]

39.    Social distancing is of paramount importance because even entirely asymptomatic persons can be infected with COVID-19 and unknowingly transmit it to others.[9]

40.    Proper sanitation measures, including frequent hand washing and frequent cleaning of surfaces with approved disinfectants, are also recommended.[10] Governor Pritzker has issued a state-wide "stay at home" order to slow the disease's spread.[11]

41.    None of the recommended measures for mitigating the spread of COVID-19 are possible for persons confined in prisons and those who must interact with them.

---

[6]    *Id.*

[7]    "Experts tell White House coronavirus can spread through talking or even just breathing, *CNN,* April 2, 2020 (available at: https://www.cnn.com/2020/04/02/health/aerosol-coronavirus-spread-white-house-letter/index.html)

[8]    "Mitigation Strategies for Communities with Local COVID-19 Transmission," *Centers for Disease Control and Prevention*, Mar. 12, 2020 (available at https://www.cdc.gov/coronavirus/2019- ncov/downloads/community-mitigation-strategy.pdf)

[9]    *See* n. 5, *supra*.

[10]    "How to Protect Yourself," *Centers for Disease Control and Prevention* (available at: https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html)

[11]    "Read the Governor's Full Order Requiring Illinois Residents to Stay at Home," *NBC 5 Chicago* (Mar. 20, 2020) (available at: https://www.nbcchicago.com/news/local/read-the-governors-full-order-requiring-illinois-residents-to-stay-at-home/2241196/)

42.  Many IDOC facilities are overcrowded. For example, Graham Correctional Center, where Plaintiff Barnes is imprisoned, is currently 20 percent above its maximum operating capacity. According to the IDOC's website, Graham has an operational capacity of 1,596 prisoners and currently houses 1,919 prisoners.[12]

43.  Prisoners at Graham are housed two men to a cell; 20 men to a wing. All of these individuals are in close proximity to one another day-in and day-out. It is not possible for them to practice "social distancing" from one another.

44.  On Sunday, April 5, 2020, IDOC confirmed that a staff member at Graham Correctional Center was diagnosed with COVID-19, thus greatly increasing the likelihood that prisoners at Graham will be infected.[13]

45.  When a prisoner or staff member at a detention facility is infected with COVID-19, the disease spreads rapidly. For example, at the Cook County Jail, 210 detainees and 34 staff have been diagnosed with COVID-19, despite the jail's having taken the drastic step of releasing approximately 10 percent of its population to alleviate crowding. The disease spread exponentially among detainees at the jail, from two infections on March 23, to 210 just nine days later.[14]

---

[12]  Graham Correctional Center Facility Data, Illinois Department of Corrections (available at: https://www2.illinois.gov/idoc/facilities/Pages/grahamcorrectionalcenter.aspx) (last visited April 3, 2020).

[13]  https://www2.illinois.gov/idoc/facilities/Pages/Covid19Response.aspx (last visited April 5, 2020)

[14]  "Cook County Jail Now Reports 210 Inmates Have Tested Positive for COVID-19," *NBC5 Chicago*, April 4, 2020 (https://www.nbcchicago.com/news/coronavirus/cook-county-jail-now-reports-210-inmates-have-tested-positive-for-covid-19/2250366/)

46. At Stateville Correctional Center, 56 prisoners have been diagnosed with COVID-19 and two have died.

47. With COVID-19 cases on the rise throughout the State, it is inevitable that other IDOC facilities will become loci for the spread of the disease.

**The Challenged Statute**

48. The One-Per-Address Statute is set forth in the Illinois Uniform Code of Corrections at 730 ILCS 5/3-3-7(a)(7.6).

49. The sole mechanism through which the One-Per-Address Statue is enforced is through the IDOC's approval or rejection of parolees' proposed host sites. That is, it is not a criminal offense for an individual on MSR for a sex offense to live at the same address as another registrant.[15]

50. The One-Per-Address Statute went into effect on July 11, 2005. Prior to that date, individuals on MSR for sex offenses were permitted to live in the same residence as other registrants.

51. On information and belief, the One-Per-Address Statute is a major cause, if not the single largest cause, of the continued imprisonment of members of the *Murphy* class. This is so because other statutes (*e.g.*, the 500-foot rules) already strictly circumscribe the areas where individuals convicted of sex offenses may live. Pursuant to the One-Per-Address Statute, if a building complies with the other

---

[15] In contrast, the statutes prohibiting individuals classified as "child sex offenders" from living within 500 feet of schools, daycares and playgrounds (720 ILCS 5/11-9.3 (b-5) and (b-10)) are part of the criminal code. It is a Class 4 felony for a "child sex offender" to "knowingly" live at a prohibited location. 720 ILCS 5/11-9.3(f).

restrictions, only one parolee may live there, even if it is a large apartment complex with hundreds of units.

52.    There is no reason to conclude that people who have been convicted of sex offenses' living near one another contributes to criminality. At least one analysis found that it has the opposite effect: it reduces the incidence of re-offense and improves supervision. A Minnesota Department of Corrections report concluded as follows:

> This examination of level three re-offenders does not reveal a negative effect related to a level three offender living with another sex offender. In fact, supervision agents in both Hennepin and Ramsey County have noted benefits from having more than one level three offender living in one location. Closer supervision is possible because travel time between offenders is reduced. Also, level three offenders who live with other level three offenders experience more visits from a supervising agent because agents for both offenders visit the same property. Finally, offenders tend to inform on each other when supervision restrictions are violated or crimes are committed.[16]

53.    There is no logical reason to believe that there is a compelling public safety need to prohibit people on MSR for sex offenses from living at the same address as one another, and in the *Murphy* litigation, the IDOC did not come forth with any safety or rehabilitative justification for the One-Per-Address Statute.

---

[16]    *See* "Level Three Sex Offender Residential Placement Issues," *Minnesota Department of Corrections* (available at: https://mn.gov/doc/assets/Lvl%203%20SEX%20OFFENDERS%20report%202003%20(revised%202-04)_tcm1089-272828.pdf) (last visited April 3, 2020)

## CLASS ALLEGATIONS

54.     Pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiff seeks certification of this complaint as a class action for purposes of equitable relief on behalf of a class defined as follows.

- All individuals who have been convicted of sex offenses and completed their court-imposed sentence of incarceration but remain imprisoned in the Illinois Department of Corrections because they cannot find housing that complies with the One-Per-Address Statute, 730 ILCS 5/3-3-7(a)(7.6).

55.     The Class seeks a declaration that the One-Per-Address Statute violates the Eighth Amendment as applied to them and an injunction prohibiting Defendant from continuing to enforce the statute.

56.     The proposed class is numerous. According to the final report of the Illinois Sex Offenses & Sex Offender Registration Task Force, published in December 2017, "[o]n average, the Illinois Department of Corrections houses 1,200 to 1,400 offenders who may not be released from custody because they are unable to secure permanent, stable housing meeting Illinois statute requirements or agency policy."[17] On information and belief, the number of individuals imprisoned in IDOC due to a lack of compliant housing has grown substantially since the publication of that report. If only five percent of those individuals are being held due to the One-Per-Address Statute, the class would easily satisfy the numerosity requirement.

57.     There are questions of law and fact common to all class members, including but not limited to the following:

- What are the rationales for the One-Per-Address Statute;

[17]     Available at: http://www.icjia.state.il.us/news/sex-offenses-and-sex-offender-registration-task-force-final-report

14

- Whether there is any compelling interest served by the Statute;

- Whether the Statute violates the Eighth Amendment as applied to the members of the class.

58.   All individuals falling within the class definition are subject to the same Statute. Given the commonality of the questions pertinent to all class members, a single judgment would provide relief to each member of the class.

59.   Defendant has acted and continues to act in a manner adverse to the rights of the proposed class, making final declaratory relief appropriate with respect to the class as a whole.

60.   The named Plaintiff will fairly and adequately represent the interests of the class; and the named Plaintiff's claims are typical of the claims of all members of the proposed class.

61.   Plaintiff's counsel has extensive experience and has devoted substantial professional and financial resources to representing individuals in cases involving the same type of claim raised here—namely, the *Murphy* class action. Plaintiff's counsel will fairly and adequately represent the interests of the class.

## COUNT I
## 42 U.S.C. §1983 – EIGHTH AMENDMENT

62.   Plaintiff, individually and on behalf of the class he seeks to represent, realleges and reincorporates, as though fully set forth herein, each and every allegation contained above.

63. The One-Per-Address Statute and its application to the members of the class as described herein violates the Eighth Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

a) Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b) Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c) Enter judgment declaring that 730 ILCS 5/3-3-7(a)(7.6) as applied to Plaintiff and the members of the class violates the Eighth Amendment of the U.S. Constitution;

d) Enter a permanent injunction prohibiting Defendant from continuing to enforce 730 ILCS 5/3-3-7(a)(7.6);

e) Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f) Grant such other relief as this Court deems just and proper.


Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiff*


Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net