| | | |
|---|---|---|
| COLUMBO GALINDO (M08407), | ) | |
| ANDRA SAMPSON (R70879), | ) | |
| JOHN MARGARELLA (M36976), | ) | |
| JONATHAN SPARKS (S10787), | ) | |
| KENNETH GREEN (R72403), | ) | |
| FREDRICK CHAMBLIS (M32848), | ) | |
| COREY CROWE (M41508), | ) | No. 20-cv-2137 |
| DANA MONSON (M08651), | ) | |
| DAVID EASTON (K63639), | ) | |
| JOSHUA ATKINS (Y12324), | ) | |
| KENNETH SCHROEDER (M35946), | ) | |
| WADE COUNCIL (M25987), | ) | |
| CHRISTOPHER SHELTON (R34928), | ) | |
| MARK FALLER (K78827), | ) | |
| PAUL D. HUBBARD (M07217), and | ) | |
| JOSHUA HUDDLESTON (M44423), | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROB JEFFREYS, in his official | ) | |
| capacity as the director of the Illinois | ) | |
| Department of Corrections, | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT FOR
## INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, complain

against Defendant Rob Jeffreys, Director of the Illinois Department of Corrections,

as follows:

**NATURE OF THE CASE**

1. The named Plaintiffs are all members of the certified class in *Murphy v. Raoul,* 16-cv-11471. Each of the Plaintiffs remains imprisoned in the Illinois Department of Corrections ("IDOC") beyond the completion of his court-ordered term of imprisonment because he does not have an approved "host site" at which to reside while on Mandatory Supervised Release ("MSR").

2. Currently, the sole barrier to each of the named Plaintiffs' release is an Illinois law that prohibits an individual on MSR for sex offense from living "at the same address or in the same condominium unit or apartment unit or in the same condominium complex or apartment complex with another person he or she knows or reasonably should know is a convicted sex offender or has been placed on supervision for a sex offense." 730 ILCS 5/3-3-7(a)(7.6) (hereinafter the "One-Per-Address Statute" or "the Statute").

3. Plaintiffs, individually and on behalf of all others similarly situated, contend that continued enforcement of the One-Per-Address Statute violates the Eighth Amendment and the Equal Protection Clause and seek an injunction prohibiting Defendant Jeffreys from continuing to enforce the Statute.

**JURISDICTION AND VENUE**

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 2201. Pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, this Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims asserted herein occurred in this district.

**THE PARTIES**

6. Defendant Rob Jeffreys is sued in his official capacity as director of the Illinois Department of Corrections. In his capacity as the director of IDOC, he has final authority to set the Department of Corrections' policies with regard to approval of prisoners' host sites. The Department of Corrections' power to approve or deny proposed host sites is the sole mechanism through which the One-Per-Address Statute is enforced.

7. The named Plaintiffs are individuals who are entitled to release from IDOC and, as set forth in full below, have places to live outside of IDOC that would be approvable host sites but for the One-Per-Address Statute.

8. The named Plaintiffs seek to represent a class of all individuals who have served their entire sentence of imprisonment and are entitled to release on MSR but remain in prison because they cannot obtain a host site that satisfies the One-Per-Address Statute.

**RELEVANT FACTS**

**The *Murphy* Litigation**

9. The plaintiffs in *Murphy* challenged the constitutionality of the "host site" requirement as it was being applied to individuals who have been sentenced to an indeterminate term of "three years to life" on MSR. Such individuals face the

possibility of being imprisoned for life if they are unable to find and/or pay for housing that meets the requirements imposed by Illinois law and IDOC policy because their MSR time never begins to run until they are released from prison to an approved host site. *See* 730 ILCS 5/3-14-2.5(e).

10. The *Murphy* plaintiffs identified several layers of restrictions that limit where people sentenced to indeterminate MSR can live, which, taken together, make it virtually impossible for the members of the class to find host sites. Among the restrictions are the following:

- Sections of the Illinois Criminal Code which make it a crime for any individual classified as a "child sex offender" to live within 500 feet of a school, playground, or daycare (720 ILCS 5/11-9.3 (b-5), (b-10));

- Sections of the Illinois Unified Code of Corrections which prohibit persons required to register as sex offenders from living "near" "parks, schools, day care centers, swimming pools, beaches, theaters, or any other places where minor children congregate without advance approval of an agent of the Department of Corrections" (730 ILCS 5/3-3-7(b-1)(12));

- The One-Per-Address Statute which requires individuals on MSR for sex offenses to "refrain from residing at the same address or in the same condominium unit or apartment unit or in the same condominium complex or apartment complex with another person he or she knows or reasonably should know is a convicted sex offender," unless residing at a "licensed transitional housing facility for sex offenders," a facility "operated or licensed by the Department of Children and Family Services or by the Department of Human Services," or a "licensed medical facility" (730 ILCS 5/3-3-7(a)(7.6));

- Housing restrictions imposed purely as a matter of IDOC policy, including prohibiting living in a host site where children visit or reside (including the parolee's own children), where there are computers or Wi-Fi access, and/or where there is no land-line telephone;

- The unavailability of half-way houses, transitional housing, homeless shelters or other free or low-cost housing for indigent parolees; and

4

- The IDOC's interpretation of the One-Per-Address Statute as prohibiting a sex offender parolee from living in a building adjacent to a building where another registrant lives and/or from living in the same trailer park as another registrant.

11. On April 6, 2018, *Murphy* was certified as a class action on behalf of "all individuals sentenced to serve three-years-to-life on MSR currently detained in the IDOC who have been approved for release on MSR by the PRB but have been denied release from IDOC custody because of their inability to obtain an approved host site." *Murphy v. Raoul*, 16-cv-11471, ECF No. 63.

12. On March 31, 2019, this Court granted the plaintiffs' motion for summary judgement on their claim that the State's statutory and regulatory scheme violates the Equal Protection Clause and the Eighth Amendment. *Murphy v. Raoul*, 16-cv-11471, ECF No. 132; *Murphy v. Raoul*, 380 F. Supp. 3d 731 (N.D. Ill. 2019).

13. This Court's summary judgment decision did not single out a particular Illinois law or IDOC policy that violated the constitution. Rather, the Court held that the State's "statutory and regulatory scheme" as a whole (*i.e.*, the overlapping restrictions imposed by Illinois law, the IDOC's interpretation of the law, and IDOC's policies) violates the *Murphy* class's constitutional rights.

14. On January 15, 2020, the Court entered a permanent injunction requiring the Illinois Department of Corrections to put forth a plan "setting forth the specific steps [the Defendants] will take to ensure that by no later than January 2, 2021, no member of the class will remain imprisoned due to an inability to comply with the host site requirement." *Murphy v. Raoul*, 16-cv-11471, ECF No. 156.

15. The permanent injunction also calls for the IDOC to provide the Court with periodic status reports concerning its implementation of the compliance plan and progress towards the January 2, 2021, compliance deadline. *Id*.

16. At the time of this filing, it is counsel's understanding that the IDOC has succeeded in releasing only four members of the *Murphy* class from IDOC. Each of those individuals was detained in IDOC for more than eight years beyond the completion of his prison sentence.

17. As of March 2020, the *Murphy* class comprises 297 individuals who remain in prison beyond the completion of their court-ordered sentence of imprisonment due to an inability to meet the host site requirement.

18. The IDOC's compliance plan for meeting the January 2, 2021, deadline includes several worthwhile proposals, including changes to IDOC interpretation of statutory restrictions (*e.g.*, not applying the One-Per-Address Statute to trailer parks and adjacent buildings); changes to restrictive IDOC policies (*e.g.*, allowing individuals to reside at addresses with Wi-Fi; relaxation of the land-line requirement); and contracting with private vendors to provide transitional housing. *Murphy v. Raoul*, 16-cv-11471, ECF No. 161.

19. The compliance plan also notes that "[t]here are many statutory provisions that impede the Department's ability to approve prospective host sites for sex offenders" and states that the Department "hopes that some of the statutory impediments to identifying host sites can be reduced or eliminated through legislative change." *Id*. at 3-4.

6

**The Challenged Statute**

20. The One-Per-Address Statute is set forth in the Illinois Uniform Code of Corrections at 730 ILCS 5/3-3-7(a)(7.6).

21. The sole mechanism through which the One-Per-Address Statue is enforced is through the IDOC's approval or rejection of parolees' proposed host sites. That is, it is not a criminal offense for an individual on MSR for a sex offense to live at the same address as another registrant.[1]

22. The One-Per-Address Statute went into effect on July 11, 2005. Prior to that date, individuals on MSR for sex offenses were permitted to live in the same residence as other registrants.

23. On information and belief, the One-Per-Address Statute is a major cause, if not the single largest cause, of the continued imprisonment of members of the *Murphy* class. This is so because other statutes (*e.g.*, the 500-foot rules) already strictly circumscribe the areas where individuals convicted of sex offenses may live, and the One-Per-Address Statute makes it so only one parolee can live at each compliant property, even if it is a large apartment complex with many units.

24. There is no reason to conclude that people who have been convicted of sex offenses' living near one another contributes to criminality. At least one analysis found that it has the opposite effect: it reduces the incidence of re-offense and

---

[1]  In contrast, the statutes prohibiting individuals classified as "child sex offenders" from living within 500 feet of schools, daycares and playgrounds (720 ILCS 5/11-9.3 (b-5) and (b-10)) are part of the criminal code. It is a Class 4 felony for a "child sex offender" to "knowingly" live at a prohibited location. 720 ILCS 5/11-9.3(f).

improves supervision. A Minnesota Department of Corrections report concluded as follows:

> This examination of level three re-offenders does not reveal a negative effect related to a level three offender living with another sex offender. In fact, supervision agents in both Hennepin and Ramsey County have noted benefits from having more than one level three offender living in one location. Closer supervision is possible because travel time between offenders is reduced. Also, level three offenders who live with other level three offenders experience more visits from a supervising agent because agents for both offenders visit the same property. Finally, offenders tend to inform on each other when supervision restrictions are violated or crimes are committed.[2]

25. There is no logical reason to believe that there is a compelling public safety need to prohibit people on MSR for sex offenses from living at the same address as one another, and in the *Murphy* litigation the IDOC did not come forth with any safety or rehabilitative justification for the One-Per-Address Statute.

**Many *Murphy* Class Members Would Be Out of Prison But For the One-Per-Address Statute**

**A. NewDay Apartments Has Four Valid Host Sites Available for *Murphy* Class Members**

26. NewDay Apartments, located in Lake County, Illinois, has partnered with the IDOC to provide housing to individuals with sex offense convictions being released from prison onto MSR.

27. NewDay specializes in providing compliant housing to registrants. It currently owns seven properties which are more than 500 feet away from any

---

[2] *See* "Level Three Sex Offender Residential Placement Issues," *Minnesota Department of Corrections* (available at: https://mn.gov/doc/assets/Lvl%203%20SEX%20OFFENDERS%20report%202003%20(revised%202-04)_tcm1089-272828.pdf) (last visited April 3, 2020)

schools, playgrounds and/or daycares. One of these properties is reserved for a private-pay registrant on parole; one property currently houses a non-registrant (but will be leased to a registrant when the current tenant moves out); and one property houses six registrants who are not on parole or probation.

28. NewDay currently leases the other four properties to IDOC for the purpose of housing *Murphy* class members who cannot otherwise secure housing. Placement at NewDay is intended to give individuals who do not have the means or ability to secure a host site an opportunity to get out of prison and begin their MSR time in the community.

29. *Murphy* class members released to NewDay are given three to four months rent-free to give them an opportunity to find work, obtain government benefits to which they are entitled, and to secure housing of their own.

30. IDOC has begun releasing *Murphy* class members to NewDay Apartments. To date, four *Murphy* class members have been placed at NewDay. IDOC has been prioritizing the release of individuals who have done the most "dead-time" (*i.e.*, extra time in prison beyond the completion of their sentence).

31. Due to the One-Per-Address Statute, the IDOC is only using half of its capacity for housing *Murphy* class members at the properties it leases from NewDay. That is, the units IDOC leases from NewDay have eight separate bedrooms and could comfortably accommodate eight parolees at no additional cost to the IDOC. But because of constraints imposed by the One-Per-Address Statute,

IDOC has only released four *Murphy* class members to these properties—one at each separate address.

32. Plaintiff Columbo Galindo is a prisoner at Taylorville Correctional Center. In 2008, he was convicted of criminal sexual assault and sentenced to five years in IDOC plus three-years-to-life MSR. With "good time" credits, he completed his prison term on March 11, 2011, and has been entitled to release from prison on MSR since that date, but remains imprisoned because he has been unable to secure compliant housing. Because of his inability to find housing, Galindo has spent more than nine years of "dead time" in prison.

33. On information and belief, Plaintiff Galindo is next in line for placement at NewDay Apartments because he has done the most "dead time" of any member of the *Murphy* class who remains in prison.

34. On January 23, 2020, Galindo met with a representative of Field Services at Taylorville.[3] Galindo was told that he is approved for release to NewDay Apartments and will be released when one of the units at NewDay becomes available. He was not given any definitive timeline of when a unit would be available for him. He remains imprisoned indefinitely until a unit at NewDay becomes available.

35. Plaintiff Andra Sampson is a prisoner at Big Muddy River Correctional Center. In 2007 he was convicted of predatory criminal sexual assault and sentenced to six years in IDOC plus three-years-to-life MSR. With "good time"

---

[3] Field Services is the IDOC unit charged with responsibility for investigation and approval of host sites.

credits, he completed his prison term on March 18, 2011, and has been entitled to release from prison on MSR since that date, but remains imprisoned because he has been unable to secure compliant housing. Because of his inability to find housing, Sampson has spent more than nine years of "dead time" in prison.

36. On information and belief, Sampson is second in line (behind Galindo) for placement at NewDay Apartments because he has done the second most "dead time" among *Murphy* class members who remain in prison.

37. In April 2020, Sampson met with Connie Halliday, a counselor in the Field Services office at Big Muddy River Correctional Center. Ms. Halliday informed Sampson that he is approved for placement at NewDay Apartments and will be released when one of the units at NewDay becomes available. He was not given any definitive timeline of when a unit would be available for him, but Ms. Halliday expressed hope that he would be released "soon." He remains imprisoned indefinitely until a unit at NewDay becomes available.

38. Plaintiff John Margarella is a prisoner at Dixon Correctional Center. In 2012, he was convicted of possession of child pornography and sentenced to three years in IDOC plus three-years-to-life MSR. With "good time" credits, he completed his prison term on December 30, 2013, and has been entitled to release from prison on MSR since that date, but remains imprisoned because he has been unable to secure compliant housing. Because of his inability to find housing, Margarella has spent more than six years of "dead time" in prison.

39. Margarella is at high risk for suffering serious health complications if he contracts COVID-19 while imprisoned. Margarella has suffered two heart attacks, internal bleeding, and dangerously low blood pressure while imprisoned at Dixon Correctional Center beyond his out date. In the past five years, he has needed an emergency blood transfusion and insertion of five stents to adequately open his blood vessels.

40. Margarella does not have any friends or family outside of prison who can offer him a place to live while on MSR or help him pay for housing. He remains imprisoned indefinitely until a unit at NewDay Apartments becomes available.

41. There is no reason why the properties IDOC leases from NewDay Apartment should sit half vacant when individuals such as Galindo, Sampson and Margarella are entitled to release and could be serving their MSR time in the community at no additional expense to IDOC.

**B. Wayside Cross Ministries Seeks to Provide Host Sites to at Least 10 *Murphy* Class Members**

42. Wayside Cross Ministries is a Bible-based mission that has operated in Aurora, Illinois, for more than 90 years.

43. The Master's Touch Ministry at Wayside Cross is a Bible-based, residential life-transformation program for troubled men. The program offers room and board at no cost, and empowers its participants to change their lives through prayer, Bible study, daily church services, mentoring with local clergy, and work rehabilitation programs. It takes a minimum of seven months for a resident to complete the Master's Touch Ministry program. The end goal of the program is to give the men

the tools they need to live healthy, law abiding lives, and the ability to secure their own employment and housing.

44. Wayside Cross currently has 20 openings in the Master's Touch Ministry and is willing to accept members of the *Murphy* class at no cost to the IDOC or to the men.[4]

45. The participants in the Masters Touch Ministry all reside together in a dormitory setting at Wayside Cross, located at 215 E. New York Street in Aurora. Thus, placement at Wayside Cross does not comply with the One-Per-Address Statute.

46. Plaintiffs Kenneth Green, Fredrick Chamblis, Corey Crowe, Dana Monson, David Easton, Joshua Atkins, Kenneth Schroeder, Wade Council, Christopher Shelton and Mark Faller are all members of the *Murphy* class who have completed their sentences of incarceration and are entitled to release from IDOC on MSR, but remain imprisoned because they do not have resources to secure compliant housing.

47. Plaintiffs Green, Chamblis, Crowe, Monson, Easton, Atkins, Schroeder, Council, Shelton and Faller all would like to participate in the Master's Touch Ministry at Wayside Cross.

48. Staff at Wayside Cross have conducted phone interviews with Plaintiffs Green, Chamblis, Crowe, Monson, Easton, Atkins, Schroeder, Council, Shelton and

---

[4] Because of its proximity to a playground, Wayside Cross cannot accept into its program individuals who are classified as "child sex offenders," but it can accept individuals whose offenses involved an adult victim. Undersigned counsel has confirmed with Aurora Corporation Counsel Rick Veenstra that Aurora police are willing to register parolees at Wayside Cross provided they are not classified as "child sex offenders." The ten Plaintiffs seeking placement at Wayside Cross are not classified as "child sex offenders."

Faller. Wayside Cross has determined that each of these men meets the criteria for admission to the Master's Touch Ministry. Wayside Cross is prepared to accept these individuals immediately, provided they test negative for COVID-19.

49. In connection with these phone interviews, Jon Beall, the program director of the Master's Touch Ministry, spoke to Field Services officials from the IDOC facilities at which the Plaintiffs are imprisoned. The Field Services officials stated that the Plaintiffs will not be approved for release to Wayside Cross in the absence of a "court order" allowing them to reside there.

50. The sole reason Plaintiffs Green, Chamblis, Crowe, Monson, Easton, Atkins, Schroeder, Council, Shelton and Faller have not been approved for release to Wayside Cross is the One-Per-Address Statute, which prohibits them from living at the same address as one another or as others who are required to register as sex offenders.

## C. Members of the *Murphy* Class Could Be Released to Placements with Family

51. Plaintiff Jonathan Sparks is a member of the *Murphy* class. He is currently a prisoner at Big Muddy River Correctional Center. In 2010, Sparks was convicted of criminal sexual assault and sentenced to four years in IDOC plus three-years-to-life MSR. He completed his prison term on July 29, 2013, and has been entitled to release from prison on MSR since that date, but remains imprisoned because he has been unable to secure housing. Because of his inability to find housing, Sparks has spent nearly seven years of "dead time" in prison.

52. All of Sparks' family is out of state. Sparks seeks to live with his mother who resides in Chappell, Nebraska, while on MSR. Sparks' mother is willing and able to house and support Sparks if he is released to her home.

53. Sparks sought approval for interstate transfer to Nebraska to reside with his mother. IDOC rejected the placement solely because Sparks' mother lives with her brother (Mr. Sparks' uncle) who was convicted of a sex offense in the 1990s and released from prison in 2000.

54. The One-Per-Address Statute is the sole reason Mr. Sparks has not been approved to reside with his mother and uncle.

### D. Members of the *Murphy* Class Could Be Released to Single-Room Occupancies and Extended-Stay Motels

55. Plaintiff Joshua Huddleston is a member of the *Murphy* class. He is currently a prisoner at Robinson Correctional Center. In 2013, Huddleston was convicted of predatory criminal sexual assault and sentenced to six years in IDOC plus three-years-to-life MSR. He completed his prison term on January 22, 2019, and has been entitled to release from prison on MSR since that date, but remains imprisoned because he has been unable to secure housing. Because of his inability to find housing, Huddleston has spent 15 months of "dead time" in prison.

56. Huddleston does not have any family outside of prison who can offer him a place to stay or help him secure housing.

57. Huddleston is retired from the U.S. military and has a savings account with sufficient funds to pay for his own housing for at least a year. However, because he is imprisoned, he is not able to search for housing, sign a lease, or set up utilities.

58. For an individual in Mr. Huddleston's position, an extended-stay motel or a single-room occupancy (SRO) building are the only viable options for securing housing at which to live while on MSR. This is so because IDOC requires functioning utilities at the host site prior to approving an individual for release, and an individual who doesn't have outside help can't set up a phone line and electric service while imprisoned.

59. Mr. Huddleston would like to parole to an extended-stay motel or an SRO. Such a host site would be ideal for him because such locations are furnished and have utilities included. Staying at such a location for a period of several months would enable Huddleston to start his MSR time, get back on his feet and locate suitable housing of his own.

60. InTown Suites, located at 350 East Roosevelt, Villa Park 60181, offers furnished rentals on a monthly basis. InTown is willing to rent to an individual on parole provided they have funds to pay for a month in advance and can show valid identification. On information and belief, InTown Suites complies with the restriction on living within 500 feet of schools, playgrounds and daycares.

61. As a matter of long-standing past practice, IDOC has not considered motels or SROs to be approvable host sites for individuals who are required to register as sex offenders due to the One-Per-Address statute. It has been the IDOC's position that such a placement is not sufficiently stable because an individual could be forced to move if another registrant moves into the same building.

**Health Risks of Detention in IDOC Amid the COVID-19 Pandemic**

62.     We are in the midst of a world-wide health crisis caused by the rapid spread of coronavirus and COVID-19. The number of known COVID-19 infections is rising at an alarming rate. As of April 27, 2020, there have been more than 3 million infections globally[5]; and Illinois alone has nearly 46,000 known cases.[6] More than 210,000 people have died.[7]

63.     The risks to the health of individuals detained in close proximity to one another in prisons—as well as the staff, attorneys, medical professionals, and clergy who visit and work in these prisons—cannot be overstated. COVID-19 is highly contagious between people who are in close contact with one another.[8]

64.     The virus is transmissible through coughing, sneezing, and contact with surfaces.[9] Experts advise that "talking" and "normal breathing" also likely transmit

---

[5]     Johns Hopkins University, Coronavirus Resource Center, https://coronavirus.jhu.edu/map.html (last visited April 27, 2020).

[6]     Illinois Department of Public Health, Corona Virus Response, https://www.dph.illinois.gov/covid19 (last visited April 27, 2020).

[7]     *See* note 5, *supra.*

[8]     "How COVID-19 Spreads," *Centers for Disease Control and Prevention* (available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html)

[9]     *Id.*

the disease.[10] The CDC urges social distancing—*i.e.*, every person should remain at least six feet away from every other person—to avoid transmission of the disease.[11]

65. Social distancing is of paramount importance because even entirely asymptomatic persons can be infected with COVID-19 and unknowingly transmit it to others.[12]

66. Proper sanitation measures, including frequent hand washing and frequent cleaning of surfaces with approved disinfectants, are also recommended.[13] Governor Pritzker has issued a state-wide "stay at home" order to slow the disease's spread.[14]

67. None of the recommended measures for mitigating the spread of COVID-19 are possible for persons confined in prisons and those who must interact with them.

68. Illinois officials have publicly acknowledged the severe risk COVID-19 poses to those detained in IDOC and the impossibility of proper mitigation measures in correctional facilities. At Governor Pritzker's April 4, 2020, press

---

[10] "Experts tell White House coronavirus can spread through talking or even just breathing, *CNN*, April 2, 2020 (available at: https://www.cnn.com/2020/04/02/health/aerosol-coronavirus-spread-white-house-letter/index.html)

[11] "Mitigation Strategies for Communities with Local COVID-19 Transmission," *Centers for Disease Control and Prevention*, Mar. 12, 2020 (available at https://www.cdc.gov/coronavirus/2019- ncov/downloads/community-mitigation-strategy.pdf)

[12] *See* note 8, *supra.*

[13] "How to Protect Yourself," *Centers for Disease Control and Prevention* (available at: https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html)

[14] "Governor Pritzker's Executive Orders and Rules," *Illinois Dept. of Public Health* https://www.dph.illinois.gov/covid19/governor-pritzkers-executive-orders-and-rules.

briefing,[15] Illinois Department of Public Health Director Dr. Ngozi Ezike stated as follows:

> We have seen clusters of cases in ... correctional centers.... I want to touch on the difficulty of preventing the virus from infiltrating these congregate settings and the challenges of stopping that spread. The natural movement of people needing to come in and out of those settings, even when they're decreased to the minimal amount, still ... increases the potential for rapid spread of the virus to people who live, eat and recreate all in the same space. Options for medical isolation of these COVID-19 patients are limited. ... Ideally, people who are positive should be isolated individually, and close contacts should be quarantined individually. However, that can't always be possible given the constraints of space.

69. At Stateville Correctional Center, 122 prisoners have been diagnosed with COVID-19. There are confirmed cases of COVID-19 in 15 IDOC facilities to date.[16]

## CLASS ALLEGATIONS

70. Pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs seek certification of this complaint as a class action for purposes of equitable relief on behalf of a class defined as follows.

- All individuals who have been convicted of sex offenses and completed their court-imposed sentence of incarceration but remain imprisoned in the Illinois Department of Corrections because they cannot find housing that complies with the One-Per-Address Statute, 730 ILCS 5/3-3-7(a)(7.6).

---

[15] "Daily Corona Virus Press Briefings, *Illinois Dept. of Public Health*, http://www.dph.illinois.gov/topics-services/diseases-and- conditions/diseases-a-z-list/coronavirus/media-publications/daily-press-briefings

[16] "COVID-19 Response," *Illinois Dept. of Corrections*, https://www2.illinois.gov/idoc/facilities/Pages/Covid19Response.aspx (last visited April 27, 2020)

71.     The class seeks a declaration that the One-Per-Address Statute violates the Eighth Amendment and the Equal Protection Clause as applied to them and an injunction prohibiting Defendant from continuing to enforce the Statute.

72.     The proposed class is numerous. According to the final report of the Illinois Sex Offenses & Sex Offender Registration Task Force, published in December 2017, "[o]n average, the Illinois Department of Corrections houses 1,200 to 1,400 offenders who may not be released from custody because they are unable to secure permanent, stable housing meeting Illinois statute requirements or agency policy."[17] On information and belief, the number of individuals imprisoned in IDOC due to a lack of compliant housing has grown substantially since the publication of that report. If only five percent of those individuals are being held due to the One-Per-Address Statute, the class would easily satisfy the numerosity requirement.

73.     There are questions of law and fact common to all class members, including but not limited to the following:

- What are the rationales for the One-Per-Address Statute;

- Whether there is any compelling interest served by the Statute;

- Whether the Statute violates the Eighth Amendment and Equal Protection Clause as applied to the members of the class.

74.     All individuals falling within the class definition are subject to the same Statute. Given the commonality of the questions pertinent to all class members, a single judgment would provide relief to each member of the class.

---

[17]   Available at: http://www.icjia.state.il.us/news/sex-offenses-and-sex-offender-registration-task-force-final-report

75. Defendant has acted and continues to act in a manner adverse to the rights of the proposed class, making final declaratory relief appropriate with respect to the class as a whole.

76. The named Plaintiffs will fairly and adequately represent the interests of the class; and the named Plaintiffs' claims are typical of the claims of all members of the proposed class.

77. Plaintiffs' counsel has extensive experience and has devoted substantial professional and financial resources to representing individuals in cases involving the same type of claim raised here—namely, the *Murphy* class action. Plaintiffs' counsel will fairly and adequately represent the interests of the class.

**COUNT I**
**42 U.S.C. §1983 – EIGHTH AMENDMENT**

78. Plaintiffs, individually and on behalf of the class they seek to represent, reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

79. In *Murphy v. Raoul*, 380 F. Supp. 3d 731, 738 (N.D. Ill. 2019), this Court has already concluded that it violates the Equal Protection Clause and the Eighth Amendment to subject individuals to indefinite incarceration solely because they cannot meet the host-site requirement, holding as follows:

> At the very heart of the liberty secured by the separation of powers is freedom from indefinite imprisonment by executive decree. The Attorney General and Director's current application of the host site requirement results in the continued deprivation of the plaintiffs' fundamental rights and therefore contravenes the Eighth and Fourteenth Amendments to the Constitution of the United States.

80.     The One-Per-Address Statute is the sole reason the named Plaintiffs and the members of the proposed class remain imprisoned in violation of their Eighth Amendment rights.

81.     Thus, the One-Per-Address Statute violates the Eighth Amendment as applied to the named Plaintiffs and the members of the proposed class.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a) Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b) Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c) Enter judgment declaring that 730 ILCS 5/3-3-7(a)(7.6) as applied to Plaintiffs and the members of the class violates the Eighth Amendment of the U.S. Constitution;

d) Enter a permanent injunction prohibiting Defendant from continuing to enforce 730 ILCS 5/3-3-7(a)(7.6);

e) Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f) Grant such other relief as this Court deems just and proper.

## COUNT II
## 42 U.S.C. §1983 – FOURTEENTH AMENDMENT – EQUAL PROTECTION

82.     Plaintiffs, individually and on behalf of the class they seek to represent, reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

83.     The One-Per-Address Statute violates the Equal Protection Clause as applied to the named Plaintiffs and the members of the proposed class.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a) Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b) Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c) Enter judgment declaring that 730 ILCS 5/3-3-7(a)(7.6) as applied to Plaintiff and the members of the class violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution;

d) Enter a permanent injunction prohibiting Defendant from continuing to enforce 730 ILCS 5/3-3-7(a)(7.6);

e) Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f) Grant such other relief as this Court deems just and proper.


Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiff*


Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net