**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARCUS BARNES, *et al.*, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | No. 20-cv-2137 |
| v. | Judge Kendall |
| ROB JEFFREYS, in his official capacity as the Director of the Illinois Department of Corrections, | |
| Defendant. | |

**PLAINTIFFS' PETITION FOR ATTORNEYS' FEES**

Plaintiffs, through counsel, respectfully request that this Honorable Court grant Plaintiffs' motion for an award of attorneys' fees pursuant to 42 U.S.C. §1988, Fed. R. Civ. P. 54, and N.D. Ill. L.R. 54.3. In support of this motion, Plaintiffs state as follows:

**INTRODUCTION**

For more than a decade, the Illinois Department of Corrections has routinely imprisoned persons with sex offense convictions beyond the time they were sentenced to serve because they were unable to secure approved housing that meets the onerous requirements of state law and Department policy. *See Cordrey v. Prisoner Review Bd.*, 2014 IL 117155, ¶ 17, 386 Ill. Dec. 660, 664 (Ill. 2014) (collecting state and federal cases challenging this practice beginning in 2009). At any given time, there were typically 1,200 to 1,400 people imprisoned in IDOC past

their release dates due to the unavailability of compliant housing. *See* Ill. Criminal Justice Information Authority, *Sex Offenses and Sex Offender Registration Task Force Final Report* (2017) ("On average, the Illinois Department of Corrections houses 1,200 to 1,400 offenders who may not be released from custody because they are unable to secure permanent, stable housing meeting Illinois statute requirements or agency policy.").[1]

A principal driver of this problem was the statute challenged in this case, which prohibited individuals with sex offense convictions from residing at the same address as another registrant while on parole or MSR. *See* 730 ILCS 5/3-3-7(a)(7.6) (hereinafter the "One-Per-Address Statute"). The One-Per-Address Statute prevented people with sex offense convictions from being released to safe, affordable housing that would foster their reintegration into the community. The Statute put off limits every halfway house and shelter in the State and made it impossible for the IDOC to establish a cost-effective transitional housing program for this population. Moreover, persons released from IDOC to approved host sites in the community were at constant risk of being re-imprisoned if another individual with a sex offense conviction (one not on MSR) moved into the same building or apartment complex.

This case has fundamentally altered that landscape. More than 900 people were released to the community who otherwise would have remained imprisoned in violation of their constitutional rights. The injunctive relief granted by the Court

---

[1]    Available at: https://archive.icjia-api.cloud/files/icjia/articles/SOTF_report_final_12292017.pdf

has enabled the Department to establish a transitional housing program (the Intensive Community Reintegration Program) for persons with sex offense convictions with 228 beds. A variety of charities, state contractors, and landlords throughout the State are now able to help meet this population's housing needs. For the first time in more than a decade, the number of persons being held beyond their release dates is fewer than 300 people.

This result was achieved through the diligent advocacy of Plaintiffs' attorneys, who devoted more than two years of consistent work to advocating on behalf of the class. Having achieved this important result and vindicated the rights of the Plaintiffs and members of the class, Plaintiffs are entitled to an award of reasonable attorneys' fees. Unfortunately, the Department has been unwilling to respond to counsel's efforts to negotiate a resolution of their fees within the framework set forth by Local Rule 54.3. Defendant has not disputed the amount of fees sought by Plaintiffs; it hasn't responded at all to Plaintiffs numerous efforts to resolve the fee issue in this matter. Regrettably, counsel has been forced to prepare this motion. As set forth below, Plaintiffs are entitled to an award of $367,650 in attorneys' fees.

## ARGUMENT

### I.  Plaintiffs Are the Prevailing Party

Pursuant to 42 U.S.C. § 1988, "prevailing parties" in §1983 actions are entitled to "a reasonable attorney's fee as part of the costs" of the litigation. 42 U.S.C. §1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A "prevailing party" is one that "succeed[s] on any significant issue in litigation which achieves some of the

benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109-10 (1992) (internal citations omitted).

Plaintiffs are the prevailing party in this matter because they obtained all of the relief they sought in bringing this suit. The relief obtained benefited not only the named parties, but also more than 900 members of the class and thousands of individuals who will be on MSR in the future. Indeed, Plaintiffs prevailed on every significant issue in the case:

- the case was certified a class action (ECF No. 31);

- between April 8, 2020, and August 12, 2022, Plaintiffs filed 51 successful motions for preliminary injunctive relief that enabled more than 900 individuals to secure their release from prison who otherwise would have remained in IDOC (ECF Nos. 11, 22, 29, 42, 52, 60, 64, 69, 74, 78, 82, 86, 88, 94, 101, 119, 121, 127, 129, 132, 134, 139, 142, 144, 147, 150, 152, 154, 156, 159, 160, 162, 164, 172, 174, 176, 181, 183, 185, 187, 189, 191, 193, 195, 197, 199, 201, 203, 205, 209);

- the Court granted summary judgment in Plaintiffs' favor, finding the One-Per-Address Statute unconstitutional because it "operates to keep indigent and homeless sex offenders incarcerated beyond their term of imprisonment." (ECF No. 95); and

- the Court granted a permanent injunction prohibiting further enforcement of the One-Per-Address Statute (ECF No. 211).

Because Plaintiffs obtained every form of relief sought in their complaint, they are indisputably the prevailing party. *See ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.,* 86 F. Supp. 3d 857, 864 (N.D. Ill. 2015) ("[Plaintiffs] won a permanent injunction against defendants and thus are obviously prevailing parties.").

## II. Plaintiffs Are Entitled to the Lodestar

In calculating awards of attorneys' fees, courts use the "lodestar" method—

multiplying the "number of hours reasonably expended on the litigation by a reasonable hourly rate." *Pickett v. Sheridan Health Care Center*, 664 F. 3d 632, 639 (7th Cir. 2011) (citing *Hensley*, 461 U.S. at 433). Here, the lodestar yields a total of $367,650—itemized as 774 hours of Adele Nicholas' time at a rate of $400/hour and 129 hours of Mark Weinberg's time at a rate of $450/hour. *See* Ex. 1, Decl. of Adele Nicholas (attesting to work performed and support for hourly rate); Ex. 2, Decl. of Mark Weinberg (attesting to work performed and support for hourly rate); Ex. 3, Decl. of Alexa Van Brunt (attesting to the experience and expertise of Plaintiffs' attorneys regarding the matters at issue in this case and reasonableness of their hourly rates)[2]; Ex. 6, Decl. of Louis J. Meyer (attesting to familiarity with rates charged by attorneys in the Seventh Circuit and the reasonableness of counsel's hourly rates)[3]; Ex. 5, Monthly Time Sheets (setting forth work performed on behalf of Plaintiffs).

As set forth below, Plaintiffs are entitled to the lodestar for four reasons: (1) the hours expended were reasonable; (2) the hourly rates requested are equal to or lower than those awarded to attorneys of comparable skill and experience in the community; (3) the litigation achieved an important public interest; and (4) the risk and difficulty of the case warrants a fully compensatory award.

---

[2]    Alexa Van Brunt is the Director of the Illinois Office of the MacArthur Justice Center, a national civil rights litigation non-profit organization, and the Director of the Civil Rights Litigation Clinic at Northwestern Pritzker School of Law. Ex 3 at ¶1-2.

[3]    Louis J. Meyer is a partner in the civil rights law firm Meyer & Kiss, which litigates civil rights cases throughout Illinois.

## A. The Time Expended Was Reasonable

The total number of hours billed by Plaintiffs' counsel is reasonable in light of several factors: (1) the extensive work necessary to obtain the successful result; (2) the number of class members and the time required to keep members of the class apprised of their rights; (3) the litigation positions taken by Defendant which necessitated additional work; and (4) the efficiency with which Plaintiffs' counsel reached the successful result in the case.

### 1. The Work Performed Was Necessary to Achieve the Successful Results Obtained for the Class

As set forth in the declarations of counsel and monthly time sheets, this was a labor-intensive case that required a substantial investment of time and resources. As described above, Plaintiffs counsel successfully litigated motions for class certification, 51 separate motions for preliminary injunctive relief, summary judgment and a permanent injunctive relief. *See* Ex. 1, Decl. of Adele D. Nicholas, at ¶6 (describing work performed); Ex. 5, Monthly Time Sheets. In addition, counsel appeared before the court more than 15 times on this case. *Id.*[4]

### 2. It Was Necessary for Plaintiffs' Counsel to Communicate with the Class to Keep Class Members Apprised of their Rights

Because this case was certified as a class action on behalf of all imprisoned

---

[4] Although it took approximately 18 hours to prepare this fee petition, counsel requests only nine hours of time for preparation of the petition. Such fees are recoverable when it is necessary to file a fee petition. *See Harper v. City of Chi. Heights*, No. 88 C 9800, 1994 U.S. Dist. LEXIS 18047, at *25 (N.D. Ill. Dec. 15, 1994) (awarding $15,244 in attorneys' fees for preparing a fee petition); *Christopher H. v. Comm'r of Soc. Sec.*, No. 19-cv-1192-JES-JEH, 2021 U.S. Dist. LEXIS 50181, at *11-12 (C.D. Ill. Mar. 17, 2021) ("fees on fees" were recoverable where the parties were unable to settle fee dispute).

persons with sex offense convictions who were unable to identify host sites at which to reside while MSR, counsel for Plaintiffs were inundated with phone calls and letters from class members and their families and loved ones who were seeking information about the case and how they could obtain injunctive relief from the Court to secure housing.[5] Ex. 1 at ¶7. Communication with the class necessarily took substantial time and effort.

Moreover, the Department depended heavily on Plaintiffs' counsel to identify housing providers who were willing to house members of the class, work with local police departments to explain the injunctive relief entered by the Court to enable class members to successfully register once released, and to connect class members and their families to housing resources. Ex. 1 at ¶6-7 (describing work performed). Counsel for Plaintiffs were repeatedly told by class members that Department of Corrections employees were giving them Plaintiffs' counsel's phone numbers and telling them that Plaintiffs' counsel would help them obtain housing. *Id*.

### 3. Litigation Positions Taken by Defendant Necessitated Additional Work

Plaintiffs' counsel was forced to expend significant time in this matter in response to certain litigation positions taken by Defendants. For example, after summary judgment was granted in Plaintiffs' favor on their claim that the One-Per-Address Statute was unconstitutional, Defendant continued to enforce the Statute

---

[5]   The class fluctuated in size over the course of this litigation. Based on data provided by the Department of Corrections, there were at times more than 800 persons in the class. Membership in the class was fluid over time as some individuals left the class upon completing their MSR and others joined the class upon beginning their MSR. Over the course of the litigation, there were well over 1,000 unique individuals in the class.

against members of the class unless a Court order was entered specifically enjoining enforcement of the Statute against a particular class member at a particular address. *See* ECF 135 (explaining that, notwithstanding the ruling on summary judgment, "the IDOC has continued to enforce the One-Per-Address Statute. As a matter of policy, IDOC's Field Services personnel automatically reject host sites where another registrant resides at the same address.").

Indeed, even after this Court entered a minute order granting Plaintiffs' motion for a permanent injunction (ECF 179), the Department continued to enforce the Statute unless a Court order was entered specifically enjoining enforcement of the Statute against a particular class member at a particular address. *See* ECF 180 (setting forth why Plaintiffs were filing another motion for preliminary injunctive relief after the permanent injunction was granted).

Because Defendant decided to keep enforcing the One-Per-Address Statute after it was found unconstitutional, Plaintiffs' counsel had no choice but to continue filing motions for injunctive relief on behalf of class members who otherwise would have remained wrongfully imprisoned due to their inability to locate housing that complied with the Statute. This necessarily took significant time and resources. Not only were Plaintiffs' counsel required to continue filing motions for injunctive relief, but counsel were also tasked with tracking class members' proposed addresses and upcoming release dates in order to file timely motions. *See, e.g.*, ECF 135 at 5 (explaining that "Plaintiffs' counsel has been tasked with keeping track of every prisoner who has a proposed address at a location where another registrant resides

and their scheduled release dates.")

Moreover, additional work was required because Defendant delayed the entry of a permanent injunction by arguing for the addition of irrelevant language to the permanent injunction order.[6] The parties filed briefs and had several court appearances about whether the addition of this language was appropriate. *See* ECF 138, 140. While the matter was pending, Plaintiffs had to file multiple additional preliminary injunction motions. This Court ultimately rejected Defendant's proposed language and adopted Plaintiffs' proposed permanent injunction order, which tracked the preliminary injunctions that had been entered throughout the case. *See* ECF 211.

In short, Defendant's litigation decisions put Plaintiffs in a situation where they had no choice but to undertake certain work, and Plaintiffs' attorneys should be fairly compensated for the time they were forced to expend through no fault of their own on these matters.

### 4. The Number of Hours Expended Is Much Less than What Is Typically Billed in Civil Rights Class Actions

Finally, the hours expended by Plaintiffs' counsel in this litigation should be deemed reasonable because this case was litigated very efficiently in comparison to the time expended in other civil rights litigation—especially class action cases. At all times, this case was litigated by only two attorneys, and counsel's time records

---

[6] In particular, Defendant sought to add a paragraph stating "IDOC retains the discretion to deny sex offenders release to host sites deemed unsafe or likely to impede the sex offender's rehabilitation," a matter that was not germane to the Statute being enjoined, and which the Court struck from its final order.

reflect that it was their practice to have only one attorney appear in court on most motions and hearings. *Compare, Williams v. City of Chi.*, No. 17 C 5186, 2022 U.S. Dist. LEXIS 59942, at *18 (N.D. Ill. Mar. 31, 2022) (awarding fees for 2,193.65 hours of work by plaintiffs' attorneys in a single-plaintiff civil rights case); *Mouloki v. Epee*, No. 14 C 5532, 2019 U.S. Dist. LEXIS 85493, at *38 (N.D. Ill. Jan. 10, 2019) (awarding fees for 1,192 hours of attorney time in a single-plaintiff case); *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1031 (N.D. Ill. 2009) (awarding $5.7 million in attorneys fees civil rights class action); *Kim Young v. Cty. of Cook*, No. 06 C 552, 2017 U.S. Dist. LEXIS 152466, at *16–*20 (N.D. Ill. Sep. 20, 2017) (awarding approximately $10 million in attorneys' fees in civil rights class action pertaining to jail strip search policy).

Given the efficiency with which Plaintiffs' counsel litigated this complex case, Plaintiffs' comparatively modest fees should be deemed reasonable.

### B. Plaintiffs' Counsel's Hourly Rates Are Reasonable

In a typical §1983 case, the appropriate hourly rate for an award of fees is "the rate that lawyers of similar ability and experience in their communities normally charge their paying clients for the type of work in question." *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000); *see also Williams*, 2022 U.S. Dist. LEXIS 59942, at *9 ("To determine the appropriate hourly rate for attorneys' fees under §1988, the Court considers 'the prevailing market rates in the relevant community.' A key reference point for ascertaining the market rate is the 'amount charged by attorneys of comparable skill, experience, and reputation for similar

work.'") (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984) and *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007)).

As shown below, the hourly rates sought by Plaintiffs' counsel are reasonable in light of their experience, skill and reputation and are lower than rates awarded to attorneys of comparable experience in the community.

### 1. Adele D. Nicholas

Adele Nicholas has been an attorney since 2008 and has practiced almost exclusively in the area of civil rights litigation, primarily class actions and cases seeking injunctive relief to remedy unconstitutional laws and policies. She has appeared on more than 250 cases arising under 42 U.S.C. §1983. Ex. 1 at ¶1.[7]

Ms. Nicholas devotes a substantial part of her practice to sex offense law and policy reform and is regarded as having significant expertise in this area of law. She regularly consults with attorneys on issues including residency restrictions, supervised release conditions, and registration requirements. Ex. 1 at ¶4; Ex. 3, Decl. of Van Brunt, at ¶7 ("Adele Nicholas and Mark Weinberg are considered experts in the field of sex offense law and policy reform by civil practitioners in Chicago and throughout Illinois. They are leading advocates on issues concerning

---

[7]    Some representative cases are *Murphy v. Raoul*, 16-cv-11471, 380 F. Supp. 3d 731 (N.D. Ill., 2019) (certified class action; obtained permanent injunction governing IDOC procedures for releasing sex offenders on MSR); *RCP Publications Inc. v. Chicago*, 15-cv-11398 (N.D. Ill.) (certified class action; obtained permanent injunction prohibiting enforcement of City's sign-posting ordinance and class-wide damages); *Adair et al v. Cicero*, 18-cv-3526 (N.D. Ill.) (certified class action challenging conditions of confinement in lockup facility; obtained class-wide damages and changes to detention procedures); and *Pindak v. Dart*, 10-cv-6237, 125 F. Supp. 3d 720 (N.D. Ill. 2015) (obtained jury verdict for damages and a permanent injunction requiring the Cook County Sheriff to train deputies about the First Amendment rights of individuals who panhandle).

the constitutional rights of people who are on MSR and, particularly, of those on MSR who must register as sex offenders. They provide guidance to other civil rights practitioners and criminal defense attorneys who represent people on MSR in Illinois. My colleagues and I at the MacArthur Justice Center regularly consult with both attorneys on constitutional and state law legal matters relating to MSR.")

In collaboration with attorney Mark Weinberg, Ms. Nicholas has successfully litigated constitutional challenges to residency restrictions applied to persons with sex offense convictions in Illinois, Wisconsin, and Minnesota. *See. e.g., Hoffman v. Vill. of Pleasant Prairie*, 249 F. Supp. 3d 951 (E.D. Wis. 2017) (summary judgment for plaintiffs in constitutional challenge to residency restriction ordinance); *Evenstad v. City of W. St. Paul*, 306 F. Supp. 3d 1086 (D. Minn 2018) (granting preliminary injunction to plaintiff in challenge to residency restriction ordinance); *Koch v. Vill. of Hartland*, 43 F.4th 747 (7th Cir. 2022) (reversing grant of summary judgment to defendant municipality in challenge to residency restriction ordinance). Ex. 1 at ¶3.

In addition, Ms. Nicholas serves as the Executive Director of Illinois Voices for Reform, an organization devoted to sex offense law and policy reform. *Id*. at ¶4. She was formerly a board member of the California-based Alliance for Constitutional Sex Offense Laws and has been a featured presenter or keynote speaker at the conferences of the Alliance for Constitutional Sex Offense Laws; the National Alliance for Rational Sex Offense Laws; and the Sex Offense Law and Policy Resource Center at the Mitchell-Hamline School of Law. *Id*. Ms. Nicholas has

submitted amicus briefs to the Illinois Supreme Court and Sixth Circuit Court of Appeals regarding aspects of state registration schemes. *See e.g.*, *M.S. Willman v. AG of the United States*, 972 F.3d 819 (6th Cir. 2020). She has been quoted as a source in local and national news outlets including The Chicago Tribune, Vice News, CBS58 (Milwaukee), NBC5 (Chicago) and WBEZ (91.5 FM) regarding sex offender registries and related restrictions. *Id.*

Ms. Nicholas seeks an hourly rate of $400/hour. This rate is in line with what she has been awarded in this district in the past and consistent with market rates for attorneys with a similar level of experience. In 2018, the City of Chicago agreed to an hourly rate of $375 per hour for Ms. Nicholas in a civil rights class action. *RCP Publications Inc. v. City of Chicago*, 15 C 11398, ECF No. 104-1 (N.D. Ill., 2018) (Kennelly, J.). The Court granted plaintiff's motion for fees at their requested rates. *Id.* at ECF 106. An increase to $400 per hour (an increase of less than 2 percent per year) is appropriate given that "hourly fees increase over time as a result of both inflation and the increasing skill and reputation of the billing attorney." *Williamson v. Ortiz*, No. 14-cv-6397, 2019 U.S. Dist. LEXIS 127473, at *5-6 (N.D. Ill. July 31, 2019) (Coleman, J.). An increase to $400/hour in this case is also appropriate given the significant expertise Ms. Nicholas has developed in the area of sex offense law and policy in the past eight years.

Moreover, $400/hour is well below the rates awarded to civil rights attorneys of comparable experience in the community who are routinely awarded rates in excess of $450/hour. *See* Ex. 3, Decl. of Van Brunt at ¶8 ("Both [Mr. Weinberg and Ms.

Nicholas'] rates are commensurate with, and likely lower than, the rates of other attorneys in the Chicago-area who have received fee awards for successfully litigating civil rights class actions. The rates are entirely reasonable given counsel's length of practice and successful litigation record in an area of law that requires specific expertise and knowledge."); Ex. 6, Decl. of Louis J. Meyer, at ¶7-11 (attesting to his familiarity with "the rates customarily charged by civil rights attorneys in Chicago" and the experience and skill of Plaintiffs' counsel; and stating that "their rates [are] reasonable and perhaps on the low end of the market rates for attorneys with their accomplished records in civil rights litigation."); *see also Bellamy v. City of Chi.*, No. 15 C 02678, 2017 U.S. Dist. LEXIS 136664 (N.D. Ill. Aug. 25, 2017) (awarding $465/hr. to Torreya Hamilton, an attorney with "14 years [of experience] working on civil rights cases"); *Pouncy v. City of Chi.*, No. 15-cv-1840, 2017 U.S. Dist. LEXIS 203020 (N.D. Ill. Dec. 11, 2017) (awarding $465/hr. to a Brendan Shiller, a civil rights attorney with 14 years of experience); *Miller v. City of Richmond*, No. 1:17-cv-00901-TWP-DML, 2018 U.S. Dist. LEXIS 156928, at *8 (S.D. Ind. Sep. 14, 2018) (awarding $450 per hour to a civil rights attorney with 12 years of experience); *Entm't Software Ass'n v. Blagojevich*, No. 05 C 4265, 2006 U.S. Dist. LEXIS 93638, 2006 WL 3694851, at *2 (N.D. Ill. Aug. 9, 2006) (awarding hourly rate of $425 to attorney with 10 years of experience).

### 2. Mark G. Weinberg

Mr. Weinberg is a 1984 graduate of Yale College and a 1988 graduate of the Law School at the University of Chicago. Ex. 2, Decl. of Weinberg, at ¶2. Early in his

career, he worked as a corporate attorney, specializing in securities and commodities regulatory work. *Id*. Since 2001, he has been a solo practitioner with a focus on civil rights law. *Id*. Since 2014, his main professional focus has been litigating the constitutionality of laws and polices directed at people convicted of sex offenses. *Id*. at ¶3. During that time, he has litigated upwards of 15 cases in Illinois, Wisconsin, and Minnesota. *Id*. In 2019, Mr. Weinberg was honored with the Hawthorne Award from the National Association for Rational Sex Offense Laws in recognition of his advocacy on behalf of registrants. *Id*.

As described above, Mr. Weinberg is widely regarded as an expert in the area of sex offense law and policy and regularly consults with criminal defense and civil rights attorneys throughout the state regarding such issues. *See* Ex. 3, Decl. of Van Brunt at ¶6 (attesting to Mr. Weinberg's experience and expertise in this specialized area of practice). Mr. Weinberg has extensive experience in issues related to the Fourteenth Amendment and in particular cases involving the legal rights of individuals who have been convicted of sex offenses, including (but not limited to) the following cases: *Murphy v. Raoul*, 380 F. Supp. 3d 731 (N.D. Ill. 2019); *Stone v. Jeffreys*, No. 21 C 5616, 2022 U.S. Dist. LEXIS 180228 (N.D. Ill. Aug. 30, 2022) (obtained preliminary injunction on behalf of individuals detained in prison beyond completion of their sentences due to lack of housing); *Koch. v. Village of Hartland*, 43 F.4th 747 (7th Cir. 2022); *Hoffman v. Vill. of Pleasant Prairie*, 249 F. Supp. 3d 951 (E.D. Wis. 2017); and *Evenstad v. City of W. St. Paul*, 306 F. Supp. 3d 1086 (D. Minn 2018).

Mr. Weinberg seeks a rate of $450 per hour. In 2018, the City of Chicago agreed to an hourly rate of $450 per hour for Mr. Weinberg in a civil rights class action. *RCP Publications Inc.*, 15 C 11398, ECF No. 104-1 (N.D. Ill., 2018) (Kennelly, J.); *Id.* at ECF 106. Mr. Weinberg's requested rate is lower than that awarded to attorneys in the community of comparable skill, experience and reputation. *See* Ex. 6, Decl. of Louis J. Meyer, at ¶9-11 (attesting to his familiarity with Mr. Weinberg's work and the rates charged by attorneys of comparable experience); *see also, e.g.*, *Johansen v. Wexford Health Sources*, No. 15-cv-2376, 2021 U.S. Dist. LEXIS 53955 (N.D. Ill. Mar. 23, 2021) (awarding $475/hour to attorney Mark Smolens, a 1985 law school graduate, in a civil rights case); *Fields v. City of Chi.*, No. 10 C 1168, 2018 U.S. Dist. LEXIS 2 (N.D. Ill. Jan. 1, 2018) (awarding $500/hour to attorney Candace Gorman in a civil rights case); *Bellamy v. City of Chi.*, No. 15 C 02678, 2017 U.S. Dist. LEXIS 136664 (N.D. Ill. Aug. 25, 2017) (awarding $465/hr. to Torreya Hamilton, an attorney with "14 years [of experience] working on civil rights cases").

### C. The Litigation Achieved an Important Public Interest

In addition to considering the reasonableness of the time expended and rates sought, when determining the amount of fees to award to a prevailing plaintiff, courts are also authorized to take into account "the public interest advanced by the litigation." *Swanigan v. Trotter*, No. 07 C 4749, 2012 U.S. Dist. LEXIS 131804, at *10-11 (N.D. Ill. Sep. 14, 2012) (*citing Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 856-57 (7th Cir. 1999)). Here, a fully compensatory award is warranted because, in addition to the relief obtained for the Plaintiffs and the

class, this suit achieved an important public interest. The U.S. Supreme Court has long recognized that cases in which plaintiffs obtain injunctive relief remedying a civil rights violation serve a public purpose "of the highest priority." *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) ("When a plaintiff ... obtains an injunction [under the Civil Rights Act of 1964], he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority."); *see also, e.g., Ragland v. Ortiz*, No. 08 C 6157, 2012 U.S. Dist. LEXIS 86610, at *60 (N.D. Ill. Feb. 17, 2012) ("For the public interest factor to weigh in plaintiff's favor, we look to whether there was some larger impact achieved by the verdict, such as exposing some deeper institutional problem within the department transcending the individual case; or bringing some remedy to a larger segment of the public, as might be the case where a plaintiff prevails in a class action.")

Here, there can be no doubt that the injunctive relief Plaintiffs obtained achieved precisely these ends—it vindicated the Plaintiffs' constitutional rights and permanently changed the practices of the Department of Corrections with regard to approving host sites for persons with sex offense convictions, thereby protecting individuals from suffering similar constitutional violations in the future.

### D.  The Difficulty of the Case Should be Considered

Finally, Supreme Court precedent guides courts to consider "the novelty and difficulty of the questions ... the skill requisite to perform the legal service properly ... [and] the undesirability of the case" when determining the appropriate measure

of attorneys' fees. *Hensley*, 461 U.S. at 430, n. 3. Here, each of these factors favors an award of attorneys' fees for all the hours Plaintiffs' counsel expended in litigating this case.

Courts have recognized that litigation on behalf of persons convicted of sex offenses is difficult and risky when compared to other types of civil rights litigation, thus justifying rates "on the higher end of prevailing market rates for civil rights work." *See Bailey v. Pataki*, No. 08-cv-8563 (JSR), 2016 U.S. Dist. LEXIS 82566, at *31-32 (S.D.N.Y. June 16, 2016) ("a highly significant … factor that applies to each rate is the 'undesirability' of the case. This was a highly undesirable case, a difficult matter that required zealous representation of individuals convicted of heinous crimes, which defendants graphically described to the jury. Representation of society's least popular members is among the highest ethical duties of the legal profession. Accordingly, to the extent that plaintiffs' counsel's rates are on the higher end of prevailing market rates for civil rights work … this is justified by the undesirability of the case."); *McGuire v. Murphy*, 285 F. Supp. 3d 1272, 1278, and 285, n.15 (M.D. Ala. 2018) (holding that "this case presents complex and difficult issues that affect the validity of state laws regarding sex offender community notification requirements" and noting that the "the complexity of the issues and the undesirability of the case" justified an interim award of fees); *Doe v. Fitch*, No. 3:16-CV-789-CWR-FKB, 2022 U.S. Dist. LEXIS 159827, at *10-12 (S.D. Miss. Aug. 1, 2022) (finding that higher hourly rates charged by out-of-state counsel were justified because "plaintiffs could not have obtained adequate representation in this

matter … from a team comprised exclusively of in-state lawyers" due to many lawyers' unwillingness to "represent sex offenders for personal reasons or because they are concerned about losing paying matters from clients or potential clients.") .

Thus, this factor favors Plaintiffs' receiving a fully compensatory award of attorneys' fees for the hours expended in this litigation.

## III. Defendant Refused to Participate in the Process Set forth in Local Rule 54.3 and Therefore Objections to the Hours Expended or Rates Sought Are Waived

Plaintiffs' counsel anticipates that Defendant will seek to oppose Plaintiffs' fee petition. However, Defendant's objections to the hours spent on the litigation or the requested hourly rates should be deemed waived due to Defendant's refusal to participate in the process set forth in Local Rule 54.3.

Local Rule 54.3(d) requires the parties to "confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded prior to filing a fee motion." L.R. 54.3(d). Under the Rule, the party seeking fees must "upon request" "provide the respondent with the time and work records on which the motion will be based" and "inform the respondent of the hourly rates that will be claimed for each lawyer." L.R. 54.3(d)(1). A party opposing a request for fees must "within 21 days of receipt of that information, disclose the total amount of attorney's fees paid by respondent … for the litigation" and furnish their "time and work records" (if available) and "evidence of the hourly rates for all billers paid by respondent during the litigation." L.R. 54.3(d)(5). Fourteen days after this exchange of information, the party opposing an award of fees must "specifically identify all

hours, billing rates, or related nontaxable expenses (if any) that will and will not be objected to, the basis of any objections, and the specific hours, billing rates, and related nontaxable expenses that in the parties' respective views are reasonable and should be compensated." *Id.*

Local Rule 54.3 is intended to "provide[] the parties with the time and the information necessary to enable them to attempt to resolve any fee disputes without seeking court intervention," and "assist[] the court by helping to insure that, in the event a fee motion is filed, the parties have narrowed and crystalized their disputes, and have provided the court with the information it needs to make a reasoned ruling on the fee request." *Jones v. Ameriquest Mortg. Co.*, No. 05 C 0432, 2008 U.S. Dist. LEXIS 88741, at *7-8 (N.D. Ill. May 19, 2008).

Regrettably, Defendant completely refused to participate in this process. Plaintiffs complied with the rule and provided their time and work records and support for the hourly rates they seek. *See* Ex. 4, Correspondence Pursuant to Rule 54.3, at 3-4. Defendant did not respond. *Id.* at 3. After more than three weeks elapsed, Plaintiffs' counsel followed up and Defendant stated that the Department was "still working on a response" and requested Plaintiffs' billing records in a different format. *Id.* Counsel provided the additional information requested and informed Defendant's counsel that they would like to try to resolve the fee dispute within the 91-day deadline. *Id.* Defendant's counsel asked for an additional 30 days, until November 4, to respond to Plaintiff's fee request. *Id.* at 2. Plaintiffs' counsel agreed to the request, expressing optimism that the parties would be able to

negotiate their fees prior to the 91-day deadline for filing a fee petition. *Id.* When

November 4 came, Defendant's counsel informed Plaintiffs' counsel that the

Department had not provided any authority to negotiate fees and could not provide

a date by which the Department would respond. *Id.* at 1. Plaintiffs' counsel followed

up again by phone one additional time, on November 15, 2022, to ask whether

Defendant was planning to comply with its obligations under the Local Rules prior

to the deadline for Plaintiffs to file their petition. Ex. 5, Time Sheets, at 218. The

Department still had not provided Defendant's counsel any authority to discuss

fees. Plaintiffs therefore had to proceed with preparation of this petition.

In light of the Department's refusal to participate in the process outlined in L.R.

54.3, Defendant's objections to counsel's hours or rates should be deemed waived.

*See, e.g.*, *S Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001)

(affirming award of attorneys' fees where defendant failed to raise specific

objections to individual time entries, failed to provide documentation of attorneys'

fees defendant incurred and otherwise failed to comply with Local Rule 54.3); *Israel*

*v. Michael Bucon*, No. 17-cv-6452, 2020 U.S. Dist. LEXIS 265082, at *7-8 (N.D. Ill.

Feb. 26, 2020) ("David and his counsel failed to comply with Local Rule 54.3 and, as

a result, David has waived any objections to any entries or rates. … David and his

counsel failed to meaningfully engage in the Local Rule 54.3 process despite

repeated attempts by Diane's counsel… David has therefore waived his ability to

object to the amount of fees requested by Diane."); *Degorski v. Wilson*, No. 04-cv-

3367, 2014 U.S. Dist. LEXIS 165187, at *19 (N.D. Ill. Nov. 26, 2014) ("Local Rule

54.3 sets forth a process that, when done properly, aids the Court in the fair disposition of petitions for attorneys' fees. … [Defendants] refused to engage in the process by refusing to turn over an estimate of their hours and rates or a written response to her statement of reasons. This response precluded meaningful resolution of the issues, …. In view of Defendants' lack of timely compliance with the Local Rule's directives, the Court concludes that Defendants have waived their specific objections to Plaintiff's fee entries."); *Ratliff v. City of Chi.*, No. 10 C 739, 2013 WL 3418070, at *6 (N.D. Ill. July 8, 2013) (objections to hours and rates were waived when the party opposing the award of fees did not comply with "either the letter or the spirit of Local Rule 54.3"); *Fox ex rel. Fox v. Barnes*, No. 09 C 5453, 2013 U.S. Dist. LEXIS 115280, 2013 WL 4401802, at *2 (N.D. Ill. Aug. 15, 2013) (request to reduce amount of fees awarded based on "limited success at trial" was waived because the respondent did not raise it in the parties' exchange of information pursuant to Rule 54.3).

## IV. Plaintiffs Should Be Awarded Interest

Finally, Plaintiffs are entitled to pre-judgment interest on their attorneys' fees, which courts in this district have held "begin[s] to run from a date 30 days after plaintiff submitted his fee information to the defense as required by Local Rule 54.3(d)(1)-(2)." *Ragland*, 2012 U.S. Dist. LEXIS 86610, at *67 (N.D. Ill. Feb. 17, 2012) ("That approach gives effect to the goal of Rule 54.3(d) in attempting to encourage voluntary agreement on payment of attorneys' fees, without unduly delaying the date on which interest begins to run if agreement cannot be reached.

And, this approach is one that other courts in this district have embraced.")
(collecting cases). Accordingly, Plaintiffs are entitled to pre-judgment interest on
their attorneys' fees beginning on October 11, 2022 (30 days after Plaintiffs
provided their work records to Defendant).

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Honorable Court award
Plaintiffs $367,650 in attorneys' fees with interest beginning on October 11, 2022.

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net