IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARCUS BARNES, *et al.*, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*<br><br>v.<br><br>ROB JEFFREYS, in his official capacity as the Director of the Illinois Department of Corrections<br><br>*Defendant.* | No. 20 C 2137<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marcus Barnes and a class of similarly situated plaintiffs sued Defendant Robert Jeffreys, Director of the Illinois Department of Corrections, under 42 U.S.C. § 1983 alleging that Illinois's One-Per-Address Statute was unconstitutional under the Eighth and Fourteenth Amendments. (Dkt. 1). On March 26, 2021, this Court granted Plaintiffs' motion for summary judgment. (Dkt. 95). On August 22, 2022, this Court granted a permanent injunction prohibiting further enforcement of the One-Per-Address Statute. (Dkt. 211).

Plaintiffs now move for an award of $367,650 in attorneys' fees with prejudgment interest beginning on October 11, 2022. (Dkt. 216 at 23). Defendant objects to Plaintiffs' fee petition and requests an award of $261,510 in fees with no prejudgment interest. (Dkt. 220 at 9). For the reasons explained below, the Court awards Plaintiffs $366,890 with prejudgment interest beginning on October 11, 2022.

1

**DISCUSSION**

Under 42 U.S.C. § 1988, in an action to enforce a provision of 42 U.S.C. § 1983, the court may award the prevailing party reasonable attorneys' fee as part of the costs. This fee-shifting law is designed to ensure "effective access to the judicial process" for persons with civil-rights grievances. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, p. 1 (1976)). Plaintiffs are considered "prevailing parties" for attorneys' fees purposes "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433.

In calculating a reasonable fee award, courts first calculate a "lodestar" amount by multiplying the attorneys' hours on the case by a reasonable hourly rate. *See id.*; *Pickett v. Sheridan Health Care*, 664 F.3d 632, 639 (7th Cir. 2011). After calculating the lodestar figure, the court may then adjust the amount upward or downward depending on a variety of factors, such as the litigant's degree of success, the novelty and difficulty of the issues, and awards in similar cases. *Hensley*, 461 U.S. at 430 n.3, 434; *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). Although only disputed matters are discussed in this opinion, the Court has reviewed all materials submitted by the parties in reaching its conclusions.

I. **Waiver Objections**

Plaintiffs argue that Defendant has waived any objections to the Plaintiffs' fee petition due to "Defendant's refusal to participate in the process set forth in Local Rule 54.3." (Dkt. 26 at 19). Local Rule 54.3 requires parties involved in a fee dispute to "confer and attempt in good faith to agree on the amount of fees . . . that should be awarded prior to filing a fee motion." L.R. 54.3(d). A party waives its right to object to a fee petition when it refuses to participate in the fee determination process required by the local rules of the district court. *S Indus., Inc. v. Centra 2000,*

2

*Inc.*, 249 F.3d 625, 628 (7th Cir. 2001) (holding that plaintiff waived objections to fee award where it refused to challenge fee amount, refused to cooperate with defendant, and failed to provide specific objections to requested fee amounts). Defendant did not refuse to participate in the fee determination process. Defendant responded to Plaintiffs' fee proposal with a request to file a motion for an extension of time to provide its objections and then asserted specific objections to Plaintiffs' time entries and hourly rates in its motion to the Court. (Dkt. 216 at Ex. 4; Dkt. 220 at 2-6). Plaintiffs availed themselves of the opportunity to respond to the objections when they filed a response to Defendant. (Dkt. 222). Therefore, Defendant has not waived its objections to the fee petition.

## II. Lodestar Calculation

The lodestar amount is determined by calculating the number of hours reasonably expended and multiplying that number by a reasonable hourly rate for each moving attorney. *Hensley*, 461 U.S. at 433. "An award of the originally calculated lodestar is presumptively reasonable, and it is the [defendant's] burden to convince [the Court] that a lower rate is required." *Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007) (citations omitted). Plaintiffs seek a lodestar fee award of $367,650. (Dkt. 216 at 2). Plaintiffs' request is summarized as follows:

| Individual | Hours | Hourly Rate | Total |
|---|---|---|---|
| Adele Nicholas | 774 | $400 | $309,600 |
| Mark Weinberg | 129 | $450 | $58,050 |

(*Id.*).

Defendant does not dispute that Plaintiffs prevailed or that Plaintiffs are entitled to recover reasonable attorneys' fees. (Dkt. 220 at 2). He disputes the lodestar calculation. (*Id.*). He makes

3

two specific objections to Plaintiffs' counsel's rates and hours billed. (Dkt. 220). He asserts that Plaintiffs' counsel's hours should be reduced to exclude certain time that was not reasonably expended on this litigation. (*Id.* at 2). Additionally, Defendant argues that Plaintiffs' counsel's hourly rates were excessive for time spent identifying housing providers for individual class members. (*Id.* at 4-5). The Court considers each of these arguments in turn.

### A. Hours Reasonably Expended

Defendant requests the Court to reduce Plaintiffs' fee award based on allegedly non-compensable time. (Dkt. 220 at 2-4). Specifically, Defendant objects to 3.5 hours of work related to other litigation, 0.4 hours performing administrative tasks, and 9.9 hours of work related to Plaintiffs' counsel's property management company. (*Id.* at Exs. 1-2). Defendant's objections amount to a total of $5,760 in requested reductions. (*Id.* at 2).

What qualifies as a "reasonable" use of a lawyer's time "is a highly contextual and fact-specific enterprise," and as such, the court has "wide latitude" in awarding attorney's fees. *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (citation omitted) (internal quotation marks omitted). The court considers whether hours are "excessive, redundant, or otherwise unnecessary" and may reduce the lodestar calculation, for example, for hours spent on unrelated and unsuccessful claims, hours attorneys would not bill to their clients, and hours for which the prevailing party has failed to provide adequate support. *Hensley*, 461 U.S. at 433–34.

#### i. Administrative Tasks

Defendant asserts that Plaintiffs impermissibly billed for administrative work. (Dkt. 220 at 3). He seeks to exclude 0.3 hours spent preparing and sending summons and 0.1 hours reviewing a court order regarding teleconference procedures to use while the courthouse was closed. (Dkt. 220 at Ex. 2, Dkt. 222 at 14). In calculating the hours reasonably expended on a case, the court

should "disallow time spent on what are essentially clerical or secretarial tasks." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) (concluding that "organizing file folders, document preparation, and copying documents" were clerical or secretarial tasks). *See also Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, [much less an attorney rate] regardless of who performs them."). However, the challenged time entries do not involve the type of clerical or easily delegable work that has been excluded from final awards. *See Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014) (affirming the district court's decision to exclude time billed for scanning, faxing, and filing motions as clerical work). Therefore, the Court includes the challenged entries in the lodestar.

ii. **Work Related to Do Not Pass Go, LLC**

Defendant objects to 9.9 hours billed for work related to the management of Do Not Pass Go, LLC on the grounds that it was non-compensable, non-legal work. (Dkt. 220 at 3). Do Not Pass Go is a property management company based in Rockford, Illinois that was formed in June 2020 by Plaintiffs' counsel and a third party, Will Mingus. (*Id.*). The company owns two properties in Rockford and provides housing to people on Mandatory Supervised Release with past sex-offense convictions. (*Id.*).

This Court has previously determined that hours billed were recoverable where the requesting party asserted evidence and facts justifying the reasonableness of the hours spent on specific tasks and where the tasks were necessary to continue with litigation. *See Ryan M. v. Bd. of Educ. of City of Chicago, Dist. 299*, 731 F. Supp. 2d 776, 791-93 (N.D. Ill. 2010). The Court finds Plaintiffs have sufficiently justified the reasonableness of the challenged time entries. Of the challenged time entries, 9.1 of the hours were spent on legal work that Plaintiffs' counsel did to

5

free class members from incarceration and obtain relief from the One-Per-Address Statute after this Court granted injunctive relief. (Dkt. 222 at 111-12). The challenged time entries reference the company's properties, but the work done was related to the legal representation of the class members and was necessary to continue the litigation after injunctive relief was granted. *See Ryan M.*, 731 F.Supp.2d at 793 (holding that time billed for post-mediating client meetings and emails to a hearing officer were recoverable because both were "procedural steps that were necessary to continue with litigation"). Finally, the remaining 0.2 of the challenged hours were spent on conversations with class members about court orders permitting them to move and make no reference to the management company. (Dkt. 222 at 12). Therefore, the Court includes the challenged entries in the lodestar.

### iii. Work Related to Other Cases

Defendant objects to 3.5 hours of work done on other cases, including *Murphy v. Raoul*, 380 F. Supp. 3d 731 (N.D. Ill. 2019) and *Stone v. Jeffreys*, No. 21 C 5616, 2022 WL 1292220 (N.D. Ill. Apr. 29, 2022) (Dkt. 220 at 2, Ex. 1). Plaintiffs concede that 1.5 hours of this challenged time should be attributed to those cases. (Dkt. 222 at 14). The remaining two hours consist of challenged entries about this case's class members who were also *Murphy* class members. (Dkt. 222 at 13). The class members obtained relief from this case, and Plaintiffs' counsel did not bill for this same time in *Murphy*. (*Id.*). This time was reasonably expended on this litigation and will be included in the lodestar. The following entries, which Plaintiffs concede should be attributed to *Murphy*, will be excluded from the final award:

| Date | Individual | Description | Time Billed |
|---|---|---|---|
| 4/13/2021 | Weinberg | "ph. Calls with three to lifers steve powell and Robert dalton re: their willingness to be released into homelessness" | 0.2 |

6

| 8/1/2022 | Nicholas | "call with Michaela Hammond re: resolution of the case; her husband Jacob Miskell, Y45496 is being prohibited from coming home b/c of their child; trying to find out outcome of trial" | 0.1 |
| --- | --- | --- | --- |
| 8/29/2022 | Weinberg | "letter to Sarah Newman on behalf of Eric Smith #R18798, who is a member of the Barnes class and who seeks to move to to 954 Fifth Ave., Aurora Illinois, 60505" | 0.4 |
| 8/29/2022 | Weinberg | "ph. call w/ Mark Lloyd at Graham Correctional – his outdate is 4/12/22; host site denied in Indiana; needs ICRP placement" | 0.1 |
| 8/29/2022 | Weinberg | "ph. call with Raven, calling on behalf of his cousin James Hawkins #M47382 who was harged with 3 counts of public indecency and who is in past his outdate; James is in seg and wants me to set up an atty call. (.2); legal research on whether Public Indecency/Exposure 3+ is subject to res. restrictions; It is not. See 730 ILCS 5/11-9.3(D)(2.5) (.4); it appears the IDOC is improperly denying his host sites" | 0.6 |
| 8/30/2022 | Weinberg | "ph. call with Eric Smith #R18798, who is a member of the Barnes class and who seeks to move to to 954 Fifth Ave., Aurora Illinois, 60505 re: progress on getting him out" | 0.1 |

(Dkt. 220 at Ex. 1, Dkt. 222 at 14).

## B. Reasonable Hourly Rates

A reasonable hourly rate is "derived from the market rate for services rendered." *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). Once an attorney provides evidence of his or her billing rate, the burden shifts to the defendant to present evidence establishing "a good reason why a lower rate is essential." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996). The defendant's failure to present that evidence is "essentially a concession that the attorney's billing rate is reasonable and should be awarded." *Id.*

7

Nicholas billed at a rate of $400 per hour, while Weinberg billed at a rate of $450 per hour. (Dkt. 216 at Exs. 1, 2, 5). Defendant does not dispute these rates for time spent litigating the matter, communicating with law enforcement agencies, conducting legal research, negotiating attorneys' fees, and preparing Plaintiffs' fee petition. (Dkt. 220 at 4). Defendant only objects to these rates for "time spent identifying housing providers throughout the state who would house members of the class but for the One-Per-Address Statute and frequent communication with housing providers, members of the class and their families and loved ones concerning the process for obtaining approval for housing with court authorization." (Dkt. 220 at 5) (internal quotations and citation omitted). This placement work accounts for 571.3 out of the 903 hours billed in this litigation, totaling $231,779 in billings. (Dkt. 220 at 5, Ex. 7). Defendant argues that the placement work should be billed at a lower rate of $230 per hour because the work was not legal work, or alternatively, that it could have been performed by a more junior attorney. (Dkt. 220 at 6).

This case was certified as a class action on behalf of all imprisoned persons with sex-offense convictions who could not identify host sites to reside at while on Mandatory Supervised Release ("MSR"). (Dkt. 216 at 6). Plaintiffs' counsel communicated with the class members about the status of the case and how to obtain injunctive relief from the Court and secure housing once released. (*Id.* at 7). The Department of Corrections repeatedly told class members to contact Plaintiffs' counsel to obtain housing. (*Id.*) Both Nicholas and Weinberg have expertise in sex-offense law. (*Id.* at 11, 15).

This Court has recognized that "fee determinations by their very nature are discretionary and dependent on the particular evidence presented with each individual fee petition." *Ragland v. Ortiz*, No. 08 C 6157, 2012 WL 4060310, at *2 (N.D. Ill. Sept. 14, 2012) (citing *Jarrad v. CDI Telecomms, Inc.*, 408 F.3d 905, 915 (7th Cir. 2005). When non-legal or administrative work has

8

been billed at an attorney's hourly rate, a court may reduce the rate to reflect the proper hourly rate of a legal assistant or more junior attorney who could have performed it, or a court may disallow the hours entirely.[1]

Defendant's argument that the placement work could have been done by junior attorneys is unpersuasive. First, he relied on Plaintiffs' counsel to perform this work throughout litigation and is not seeking to exclude these hours. (Dkt. 216 at 7) ("Counsel for Plaintiffs were repeatedly told by class members that Department of Corrections employees were giving them Plaintiffs' counsel's phone numbers and telling them that Plaintiffs' counsel would help them obtain housing."). *See Gusman*, 986 F.2d at 1151 (rejecting the defendant's characterization of the case as a "pushover that could have been assigned to junior attorneys" where the defendant conceded that the hours devoted to the case were appropriate).

Second, Plaintiffs provided sufficient evidence to establish that the placement work was complex and necessary to the ultimate outcome of the case. The placement work involved Plaintiffs' counsel spending "hundreds of hours on the phone with hundreds of class members and their families to inform them of the status of the case, assist them with obtaining injunctive relief from the One-Per-Address Statute and connect them with housing providers." (Dkt. 222 at 5-6). This work was "absolutely necessary to secure the final result obtained from the litigation—i.e., the release of more than 900 people who were being imprisoned in violation of their constitutional rights." (*Id.* at 8). *See Spegon*, 175 F.3d at 553 (affirming the lower court's decision to disallow an

---

[1] *See Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993) (holding that a judge may depart from an attorney's presumptive rate if he determines that attorney's performance did not justify it or if the plaintiff did not need "top-flight counsel" for a "no-brainer" case); *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (finding that it is reasonable for a judge to assume that routine work should be delegated to competent attorneys who charge lower rates); *Spegon*, 175 F.3d at 553 (holding that the court should disallow hours expended by an attorney on tasks that are easily delegable to non-professional assistance); *Ryan M.*, 731 F. Supp. 2d at 791-92 (holding that a court may reduce an attorney's fee to reflect the proper hourly rate of a legal assistant who could have performed any non-legal work that was billed at the attorney's hourly rate).

attorney to bill for time on "simple administrative tasks" that were delegable to non-professionals and did not contribute to the client's interest in the case); *Ryan M.*, 731 F. Supp. 2d at 791-92 (holding that the plaintiff failed to justify the reasonableness of billing time for the non-legal work of researching preschools at an attorney's hourly rate where they did not provide information about the complexity of the work).

Third, Plaintiffs' counsel's experience made them particularly well-suited to accomplish the placement work that was necessary to the case. For example, part of the placement work involved connecting class members with housing providers, which, given the "complex web of restrictions that apply to persons with sex offense convictions," only someone with expertise in Illinois' sex offense laws and Department of Correction policies could do competently. (Dkt. 220 at 9). *See Small*, 264 F.3d at 708 (affirming the lower court's determination that a highly experienced attorney's hours were excessive for a case that was neither novel nor complex).

Finally, Defendant has not provided the Court with any convincing basis to conclude that lower hourly rates for the placement work is warranted. *See People Who Care*, 90 F.3d at 1312 (holding that a defendant failed to establish why a lower rate was essential where it did not submit affidavits or other specific evidence in support of its position). In support of their claimed hourly rates, Plaintiffs provided affidavits from Nicholas and Weinberg, and from third parties familiar with their work, describing their years in practice and expertise in sex-offense law. (Dkt. 216 at Exs. 1-3). Defendant argues that the placement work does not reflect the knowledge and experience of senior attorneys, so it should not be compensated at Plaintiffs' counsel's requested rate. (Dkt. 220 at 5). However, aside from pointing to cases where junior attorneys were awarded lower rates than more senior attorneys, Defendant failed to provide evidence to support his contention. (Dkt. 220 at 5-6).

10

Therefore, the Court finds that Plaintiffs' counsel's requested hourly rates are reasonable for the complex and necessary placement work done to update class members on the status of the case, assist them with obtaining injunctive relief, and connect them with housing providers.

### C. Total Lodestar Calculation

Based on the foregoing, the Court's revised lodestar calculation is as follows:

| Individual | Hours | Hourly Rate | Total |
| --- | --- | --- | --- |
| Adele Nicholas | 773.9 | $400 | $309,560 |
| Mark Weinberg | 127.6 | $450 | $57,420 |

The total lodestar amount is $366,890.

### III. Prejudgment Interest

Finally, Plaintiffs seek prejudgment interest on their attorneys' fee award. Granting prejudgment interest is left to the discretion of the Court, with the general rule that "prejudgment interest should be *presumptively available* to victims of federal law violations." *United States v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.*, 983 F.2d 790, 799 (7th Cir. 1993) (quoting *Gorenstein Enter., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)) (emphasis in original). The basis for the presumption is that without it, compensation would be incomplete, and a defendant would have an incentive to delay. *See Gorenstein*, 874 F.2d at 436. Furthermore, this Court has held that plaintiffs are entitled to prejudgment interest for the time between the submission of a fee petition and the payment of fees. *Ragland*, 2012 WL 4060310, at *7 (awarding prejudgment interest to a plaintiff who prevailed on an excessive force claim starting 30 days after the plaintiff submitted fee information to the defense pursuant to Local Rule 54.3(d)(1)-(2)).

Therefore, prejudgment interest is awarded to Plaintiffs beginning on October 11, 2022, which is 30 days after Plaintiffs submitted fee information to the defense as required by Local Rule 54.3(d)(1)-(2). (Dkt. 216 at 22, Ex. 1). Prejudgment interest shall be calculated at the prevailing prime rate of 7.14%. *See First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir.1999) ("Our practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest."); https://www.federalreserve.gov/releases/H15/default.htm (average prime rate from October 11, 2022 until the present is 7.14%).

## CONCLUSION

Plaintiffs' Motion for Fees is granted in part. Specifically, Plaintiffs are awarded $366,890 with prejudgment interest beginning on October 11, 2022.

_____
Virginia M. Kendall
United States District Judge

Date: March 20, 2023